

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-12-00637-CR

Stephen Jonathon **VOGT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 290th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR12648B
Honorable Melisa Skinner, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Catherine Stone, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed:  December 18, 2013

AFFIRMED AS REFORMED

Appellant Stephen Jonathon Vogt was found guilty by a jury for the capital murder of

Mario Alberto Raygoza on September 6, 2009, and sentenced to imprisonment for life, without

the possibility of parole, in the Institutional Division of the Texas Department of Criminal Justice.

On appeal, Vogt argues (1) the trial court's jury instruction fails to accurately apply the law of

parties to the facts of the case, (2) the State's closing jury argument violated his right to a fair trial

and due process, and (3) the record fails to establish Vogt's ability to pay attorney's fees as required

by the judgment. We reform the judgment to delete the assessment of attorney's fees and affirm the judgment as reformed.

## BACKGROUND

### A.     State's Evidence

The State called numerous officers and other individuals during their case-in-chief. Additionally, numerous audio-video recordings of interviews between Vogt and Colorado and San Antonio officers were admitted.

According to Vogt, Vogt and Garza decided they wanted to move to Colorado, but the only way they could get to Colorado was to kill someone to steal that person's car. Vogt picked the victim, Mario Alberto Raygoza. Vogt first met Raygoza through MySpace and Raygoza expressed an attraction to Vogt. By promising Raygoza he was "going to make it be worth it," Vogt convinced Raygoza to pick him up at his house and to also pick up Garza at his residence. According to Vogt, he told Raygoza that he and Garza needed help moving into a new apartment.

Prior to being picked up by Raygoza, Vogt took a steak knife from his grandmother's butcher block. While still in the vehicle, Garza stabbed Raygoza from behind with the steak knife and then, according to Vogt's confession, Vogt stabbed Raygoza with a box-cutter. Raygoza was able to escape and run from the vehicle, Garza and Vogt watched him fall and then drove Raygoza's vehicle away leaving Raygoza to die in the apartment parking lot. Raygoza died from bleeding into his chest and a cardiac air embolism.

Garza and Vogt drove to Glenwood Springs, Colorado. Along the way, they pawned and sold items for cash. When they were out of money, they resorted to shoplifting. On September 24, 2009, almost three weeks after the murder, Vogt and Garza were picked up at a City Market for petty theft/shoplifting in Glenwood Springs. Neither individual would provide the officers with identification or their names. Originally, only Garza was charged with the theft. Vogt,

however, became hysterical and inconsolable. Since he had no identification, the officers placed Vogt in a different police vehicle in an attempt to find out where he lived. Once they were back at the police station, Officers Allison Swegart and Scott Robertson recognized Vogt and Garza from a BOLO (be on the lookout) posted at their police station. Officers from San Antonio had previously determined that Vogt was in the Glenwood Springs area by Vogt's continued access to his MySpace account. After the Glenwood Springs officers obtained a video of the shoplifting, where Vogt could also be seen taking items from the store, the officers arrested Vogt as well.

Vogt was read his *Miranda* rights on several different occasions and elected to waive his rights and talk to officers each time. During his first interview with Glenwood Springs Detective John Hassell, Vogt was obsessed with seeing Garza. He was upset that he would not be able to talk to either his mother or to Garza. He offered on several occasions to provide the officers with any information they wanted if they would let him talk to Garza. Vogt denied any knowledge of anything happening in San Antonio. Detective Hassell terminated the interview and told Vogt that he was available if he wanted to discuss what happened in San Antonio.

Shortly thereafter, Detective Hassell was called by jail officers and Vogt was brought back to meet with Hassell. Vogt again waived his *Miranda* rights and told the officers he just wanted to see or talk to Garza. During the interview, Vogt told the officers many of the details and admitted to killing Raygoza. Vogt also relayed that he and Garza had tried to kill themselves with rat poison and Lime-A-Way, but that it had only made them sick. Vogt and Garza decided they did not want to be in San Antonio anymore and that they needed to leave.

Vogt told the officers that Raygoza sent him pictures of himself and that Vogt did not like it. He stated that after he and Garza stabbed Raygoza, Raygoza ran out of the car and Garza jumped in the driver's seat and they left. Vogt explained that they left because he and Garza did not want people to think that they had killed Raygoza. Garza reassured Vogt that everything would be fine.

Vogt told the officers that he had about $50.00 on him and Garza had about $10.00 and that was the money they used for gas. When Vogt refused to acknowledge facts known to be true by Detective Hassell, the interview was terminated.

The following morning, Vogt was again *Mirandized* and elected to speak to the officers. At this interview, Detective Hassell was accompanied by San Antonio Detective Tim Angell. Vogt also spoke in a subsequent interview with Detective Brent Bell, an officer with the San Antonio Police Department. Vogt told the officers that he wanted "to clarify" some of the details. He provided his and Garza's driving route, including the cities in which they stopped. Vogt even provided the officers with the five locations in which they purchased fuel for the vehicle. He explained that they stopped outside of Roswell and dyed their hair, but insisted that it was only because they liked the new colors and not because they were trying to avoid being discovered. Vogt further described how he and Garza were able to avoid detection. He stated they had only resorted to shoplifting as a last choice after they had pawned everything and begged for everything they could.

Detective Angell asked Vogt on several occasions why he and Garza picked Raygoza. Vogt responded that Raygoza was chosen because Vogt knew that he could convince Raygoza to come and pick him up. Raygoza had a car and Vogt did not really know him and he "didn't have any ties to him." Vogt reiterated that Raygoza was the only person that Vogt could think of with whom they did not have ties. Vogt tried to make the officers understand that he and Garza had determined that for he and Garza "to get on with their lives" in Colorado it required someone having to die.

Vogt further explained that he snuck out of his house and even described a basket of clothes he left behind. Vogt directed Raygoza to Garza's house where Garza was waiting for them. Vogt exited the vehicle to help Garza with his belongings. Vogt also told the officers that while he and

Garza were stabbing Raygoza, they were saying that they were sorry. Vogt further detailed that he was responsible for the "little slits" and the stab wounds were made by Garza. Vogt told officers that Raygoza "did not yell or anything," he just started running off and then fell. That was when he and Garza left for Colorado. They just wanted to start over.

After describing the murder in great detail, Vogt again asked about Garza and when he could see him. He wanted to know if Garza was still his friend.

### B.    Defense Evidence

Dr. Joann Murphey, an expert in psychology was called by the defense. Dr. Murphey examined school records, video-recordings of interrogations, and medical records. She spoke to people who knew Vogt, as well as Vogt himself. Dr. Murphey testified Vogt's father and a cousin both suffered from several mental disorders, often requiring his father to be hospitalized. At the age of ten, Vogt was diagnosed with depression, anxiety, and attention deficit hyperactivity disorder. Vogt's childhood records indicate that he was irritable, suffered with sleep problems, heard voices, and had hallucinations. Additionally, Vogt was paranoid, scared of the devil, scared of anthrax, believed strangers were in his house, and even duct-taped his head to keep voices out.

Dr. Murphey further explained Vogt was unable to think straight, suffered from a psychotic disorder, and would "literally bounce around his bedroom" for days without sleep. She continued that "Stephen has been diagnosed with almost every psychological condition that one could name." He was diagnosed with depression, anxiety, ADHD, bipolar disorder, thought disorder, and schizophrenia. Dr. Murphey opined that all of these disorders impair judgment and thus affected Vogt's ability to anticipate what would happen in a given situation.

Dr. Murphey explained that, prior to Raygoza's murder, Vogt and Garza had mixed rat poison, Lime-A-Way, NoDoz, and potentially other ingredients, with Dr. Pepper and made a suicide pact. Vogt drank his concoction first and then Garza drank his. According to Dr. Murphey,

Vogt longed for friends, was extremely vulnerable, and needed social contact. In this case, Vogt was "head over heels in love with [Garza]. He idolized him. [Garza] had lots of friends. [Garza] moved easily with people. Met people easily. Told [Vogt] whom he could spend time with and who he could not spend time with. . . . [Vogt] felt that he finally had some friends because of his relationship with [Garza]."

Dr. Murphey explained this behavior could be seen in the interrogations where Vogt's only concerns were where Garza was, whether he could talk to Garza, and whether he could see Garza. Vogt was "obsessionally involved in that relationship," to the extent that Vogt took blame and manufactured facts that did not even exist. Dr. Murphey testified that, in her opinion, Vogt "could not have foreseen that—that level of violence or violence period would occur." According to Dr. Murphey, Vogt was heavily influenced by "some kind of almost psychotic proportions of love. So that he could not anticipate that such a horrific event would occur."

During cross-examination, the State identified reports that Vogt did not have delusions or hallucinations and that after treatment, Vogt's levels of uncooperativeness, hostility, manipulativeness, hyperactivity, and distractability all significantly decreased. Dr. Murphey, however, testified these symptoms returned when Vogt stopped attending counseling sessions. She further opined that at the time of the murder, Vogt was under significant stress, he was homeless, fearful of losing his love object, and had not been sleeping. In her opinion, the culmination of all his mental and emotional problems caused Vogt not to be able to think clearly or rationally or form an idea to harm someone. Dr. Murphey could not, however, point to any literature to support her hypothesis.

**LAW OF PARTIES JURY INSTRUCTION**

Vogt argues the jury was not instructed on how the law of parties applied to Vogt and the facts of the case. More specifically, Vogt contends the State clearly asserted that Garza, not Vogt, inflicted the blows that caused Raygoza's death and, thus, Vogt was guilty as a party to the offense.

During closing argument, Vogt's defense counsel argued Vogt was not guilty of capital murder because he did not kill Raygoza. To the contrary, defense counsel argued Vogt was guilty as a party *only to the aggravated robbery* because Vogt gave the knife to Garza in order to rob Raygoza. The trial court denied defense counsel's requested instruction explaining it believed the jury could reasonably apply the definition of "criminally responsible" to the charge as written. Vogt's defense counsel properly preserved his objection prior to the charge being read to the jury.

**A.      Jury Charge**

The jury charge is the means by which a judge instructs the jurors on the applicable law. *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012). "'Because the charge is the instrument by which the jury convicts, [it] must contain an accurate statement of the law and must set out all the essential elements of the offense.'" *Id.* (alteration in original) (quoting *Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995)); *see also Abdnor v. State*, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). "'It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and to prevent confusion.'" *Reeves v. State*, PD-1711-12, 2013 WL 5221142, at \*4 (Tex. Crim. App. Sept. 18, 2013) (quoting *Williams v. State*, 547 S.W.2d 18, 20 (Tex. Crim. App. 1977)).

The application paragraph must (1) specify all conditions which the jury must determine were met before a conviction under such is authorized, (2) "authorize 'a conviction under conditions specified by other paragraph of the jury charge to which the application paragraph necessarily and unambiguously refers,'" and (3) logically provide a basis for the combination of

such paragraphs. *Vasquez*, 389 S.W.3d at 367; *accord Dinkins*, 894 S.W.2d at 339. "It is not enough for the charge to merely incorporate the allegation in the charging instrument. Instead, it must also apply the law to the facts adduced at trial." *Gray v. State*, 152 S.W.3d 125, 127 (Tex. Crim. App. 2004); *Nandin v. State*, 402 S.W.3d 404, 409 (Tex. App.—Austin 2013, no pet.).

## B.    Standard of Review

When an appellate court is presented with potential jury charge error, the court must conduct a two-step inquiry: "First, the reviewing court must determine whether the jury charge contains error. Second, the court must determine whether sufficient harm resulted from the error to require reversal." *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); *see also Sakil*, 287 S.W.3d at 25–26. If an appellate court finds an error in the jury charge, the question of which standard of harm applies is dependent upon whether an objection was lodged. *Abdnor*, 871 S.W.2d at 732. "Where there has been a timely objection made at trial, an appellate court will search for only 'some harm.' By contrast, where the error is urged for the first time on appeal, a reviewing court will search for 'egregious harm.'" *Mann*, 964 S.W.2d at 641 (quoting *Abdnor*, 871 S.W.2d at 731–32).

Because the error was properly objected to by Vogt's counsel, his conviction must be reversed if the error "was calculated to injure the rights of [the] defendant." *See* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). This standard requires proof of no more than "*some* harm to the accused from the error." *Almanza*, 686 S.W.2d at 171. In conducting its analysis, this court must consider "(1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Reeves*, 2013 WL 5221142, at *2 (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)). "This less-stringent standard still requires

the reviewing court find that the defendant 'suffered some actual, rather than merely theoretical, harm from the error.'" *Id.* (quoting *Warner v. State*, 245 S.W.3d 458, 462 (Tex. Crim. App. 2008)).

**C.      The Charge As Provided to the Jury**

The trial court provided the following charge:

> Our law provides a person is criminally responsible as a party to an offense if the offense is committed by his own conduct, or by the conduct of another for which he is criminally responsible, or by both.  Each party to an offense may be charged with commission of the offense.

> Mere presence alone will not make a person a party to an offense.  A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense.
> . . . .
> Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th Day of September, 2009, in Bexar County, Texas, the defendant, Stephen Jonathon Vogt, did, *either acting alone or together as a party with James Garza*, intentionally cause the death of an individual, namely, Mario Alberto Raygoza, by cutting or stabbing Mario Alberto Raygoza with a deadly weapon, namely, a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, and Stephen Jonathon Vogt, *either acting alone or together as a party with James Garza*, was in the course of committing or attempting to commit robbery of Mario Alberto Raygoza,

(emphasis added)

**D.      Vogt's Requested charge**

Defense counsel, following the argument in *Jaycon v. State*, 651 S.W.2d 803 (Tex. Crim. App. 1983), requested the trial court separate out the application paragraph charging Vogt as a principal from the application paragraph charging Vogt as a party to the offense.

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th Day of September, 2009, in Bexar County, Texas, the defendant, Stephen Jonathon Vogt, *acted with intent to promote or assist the commission of this offense by James Garza, by encouraging, directing, aiding or attempting to aid James Garza, to* cause the death of an individual, namely, Mario Alberto Raygoza, by cutting or stabbing Mario Alberto Raygoza with a deadly weapon, namely, a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, in the course of committing or attempting to commit robbery of Mario Alberto Raygoza,

> ***Of, if you find from the evidence beyond a reasonable doubt that James Garza in Bexar County, Texas, on or about September 6th, 2009, did intentionally cause the death of Mario Raygoza, by cutting or stabbing Mario Raygoza with a deadly weapon, namely, a knife, that in the manner of its use or intended use was capable of causing death or bodily injury. And that the defendant, Stephen Vogt, acted with intent to promote or assist the commission of this offense by James Garza, by encouraging, directing, aiding or attempting to aid James Garza, to cause the death of Mario Raygoza, by cutting or stabbing Mario Raygoza, in the course of committing or attempting to commit robbery of Raygoza.***

(emphasis added).

**E.      Analysis**

*1.      No error*

a.      <u>Jury Instruction was Proper</u>

Vogt relies heavily on the *Jaycon* opinion. *See id.* The case, however, is quite distinguishable. In *Jaycon*, there was no evidence that Jaycon was the primary actor or that Jaycon was even present at the time of the shooting. *Id.* at 807. The court held that if Jaycon was guilty, he was guilty only as a party. Thus, the court explained the jury instruction must be limited to the facts of the case. *Id.* at 808. Reversing the trial court's judgment, the Court of Criminal Appeals concluded "The charge given was not sufficient to require the jury to find whether [Jaycon's co-defendant] caused the death of . . . , the deceased, and whether [Jaycon] was criminally responsible for the acts of [Jaycon's co-defendant]." *Id.* Here, the facts adduced at trial were very different. By Vogt's own confession, he was not only present at the scene, but participated in the act by stabbing Raygoza with a box-cutter.

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). Section 7.02(a)(2) of the Texas Penal Code provides that a "person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits,

- 10 -

encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02(a)(2). Generally, the trial court may instruct the jury on the law of parties if "there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). The court may consider the events that took place before, during, and after the commission of the crime. *See Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004); *Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996).

To convict Vogt of capital murder, the trial court's charge required the jury to find the following:

(1) Vogt intentionally caused the death of Mario Alberto Raygoza either acting alone or together as a party with James Garza;
(2) Mario Alberto Raygoza was killed by the cutting and stabbing of a knife; and
(3) Vogt, either acting alone or together as a party with James Garza, was in the course of committing or attempting to commit robbery of Mario Alberto Raygoza.

Additionally, the jury was also instructed that simply being at the scene was not sufficient. To the contrary, to convict Vogt, the jury had to find that Vogt either intentionally caused Raygoza's death or was criminally responsible for the acts of a person that caused Raygoza's death. *See* TEX. PENAL CODE ANN. § 7.01(a); *Ladd*, 3 S.W.3d at 564.

Vogt provides no argument or case law as to how these abstract definitions on law of parties might have misled or confused the jury. A reasonable jury would be able to refer to the abstract definition of the law of parties without having it repeated again in the application paragraph. *See Vasquez*, 3 S.W.3d at 366. Accordingly, the jury charge properly instructs the jury regarding Vogt acting as a party to the offense of capital murder, with the underlying felony of aggravated robbery.

b.       Evidence Vogt acted as a principal

Vogt also argues that because the State conceded that the deadly stab wound was caused by Garza, Vogt can *only* be charged under the law of parties and *not* as a principal.  Yet, the jury could have understood the evidence differently.  The jury is the sole judge of the weight and credibility of witness testimony.  *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000).  If the jury did not believe Dr. Murphey's testimony that Vogt could not have foreseen Raygoza's death, the jury was free to discredit it.  *See id.; Infante v. State*, 397 S.W.3d 731, 736 (Tex. App.—San Antonio 2013, no pet.)

The medical examiner's report indicated that the stab wounds from the steak knife caused Raygoza's death.  In the videotaped interviews published to the jury, Vogt was adamant that *he* stabbed Raygoza on numerous occasions with a box-cutter.  Thus, the jury could have convicted Vogt as either a principal or as a party.

If the evidence clearly supports a jury finding that Vogt is guilty as the principal actor, any error in charging on the law of parties is harmless.  *See Cathey v. State*, 992 S.W.2d 460, 466 (Tex. Crim. App. 1999) ("[W]here, as in the instant case, the evidence clearly supports a defendant's guilt as the primary actor, error in charging on the law of parties was harmless."); *Brown v. State*, 716 S.W.2d 939, 945–46 (Tex. Crim. App. 1986) (holding the error harmless when the evidence clearly supported appellant's culpability as a primary actor); *Black v. State*, 723 S.W.2d 674, 675 (Tex. Crim. App. 1986) ("Where the evidence clearly supports a defendant's guilt as a principal actor, any error of the trial court in charging on the law of parties is harmless"); *see also Ladd*, 3 S.W.3d at 564–65 (same).  The rationale is simple, if there was no evidence to support Vogt's conviction on a party theory, then the jury would not have relied on the party instruction; instead, the jury could have rationally convicted Vogt as the principal actor.  *Black*, 723 S.W.2d at 675 n.2; *Ladd*, 3 S.W.3d at 565.

Vogt argues the charge erroneously allowed the jury to determine that Vogt acted alone. Assuming that is the case, Vogt was not harmed by the presence of the language in the charge. Here, the jury was clearly instructed that before they could find Vogt guilty of capital murder, they had to make a finding that he caused the death of Mario Raygoza while either acting alone or as a party. The record contained an abundance of evidence that Vogt was guilty as a party, and at least some evidence that he was guilty as a principal.

Because the charge in question required the jury find that Vogt acted either alone or as a party with James Garza, there was no error in the charge as provided by the trial court. *See Watson v. State*, 693 S.W.2d 938, 941 (Tex. Crim. App. 1985).

### 2. *Assuming Error, the Error was Harmless*

Even assuming some error in the charge, any such error was harmless. Reversal is required only if the error was calculated to injure the rights of the defendant; that is, some harm to the accused has resulted. *Almanza*, 686 S.W.2d at 171. To determine the degree of harm under the *Almanza* standard, an appellate court reviews (1) "'the entire jury charge[; (2)] the state of the evidence, including the contested issues and weight of probative evidence[; and (3)] the argument of counsel and any other relevant information revealed by the record of the trial as a whole.'" *See Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011) (quoting *Almanza*, 686 S.W.2d at 171).

#### a. Examining entire jury charge

*Almanza* requires the court to examine the entire jury charge. *Almanza*, 686 S.W.2d at 171; *see also Reeves*, 2013 WL 5221142, at *2.

The evidence at trial supports the conclusion that Vogt and Garza made a suicide pact. When their attempts failed, they jointly decided that they needed to leave San Antonio and go to Colorado. Vogt clearly explained he and Garza discussed that if they wanted to live in Colorado,

someone was going to have to die. Vogt picked Raygoza because he "didn't have any ties to him" and provided the knife to Garza. Vogt called Raygoza and both he and Garza planned to arrange for Raygoza to pick them up in his vehicle. They both brought clothes and belongings to leave town. Vogt told the officers that he brought the knife and that he already possessed the box-cutter. After they stabbed Raygoza, both Vogt and Garza watched Raygoza run off and fall to the ground. They both left him to die. Additionally, while trying to escape to Colorado, both Vogt and Garza attempted to alter their appearance by dyeing their hair.

Here, the State charged three alternate theories of culpability—that Vogt acted alone, as a party, or as a conspirator. In addition to the charge and requested charge, the application paragraphs included a paragraph allowing the jury to find Vogt guilty of capital murder as a conspirator to the crime. Specifically, the third paragraph of the application paragraph in the charge provided the following:

> Or, if you find from the evidence beyond a reasonable doubt that Stephen Jonathon Vogt entered into a conspiracy with James Garza to commit the felony offense of aggravated robbery or robbery and that on or about the 6th Day of September, 2009, in Bexar County, Texas, in an attempt to carry out this agreement, James Garza, did intentionally cause the death of Mario Alberto Raygoza, by cutting or stabbing Mario Alberto Raygoza with a deadly weapon, namely, a knife, that in the manner of its use or intended use was capable of causing death or serious bodily injury, and Stephen Jonathon Vogt, either acting alone or together as a party with James Garza, were in the course of committing or attempting to commit robbery of Mario Alberto Raygoza, and that such offense of capital murder was committed in furtherance of the unlawful purpose to commit aggravated robbery or robbery and was an offense that should have been anticipated as a result of the carrying out of the conspiracy to commit aggravated robbery or robbery. . . .

Importantly, *with regard to conspiracy*, the defense made no objection to the court's charge. Instead, Vogt's defense counsel argued during his closing argument that Vogt did not have the mental capacity to conspire with Garza.

To convict Vogt of capital murder, the charge required the jury to find that Vogt (1) agreed with Garza to engage in conduct that would result in the death of Raygoza; (2) performed an overt

act in furtherance of this agreement by setting up the chain of events, supplying the knife, and encouraging Garza to commit the assault; and (3) that Vogt should have anticipated Raygoza could have been killed as a result of their plan. Thus, this court's inquiry is first, whether Raygoza's murder was committed in furtherance of the robbery, and second, whether Raygoza's murder should have been anticipated as a result of carrying out the conspiracy to rob him. *See* TEX. PENAL CODE ANN. § 7.02(b).[1]

"[W]hether [Vogt] intended to kill [Raygoza] before the robbery took place is irrelevant if the relevant liability elements were established at the time the crime was committed." *See Solomon v. State*, 49 S.W.3d 356, 369 (Tex. Crim. App. 2001). The evidence is uncontroverted that Raygoza was killed during the aggravated robbery. The only evidence suggesting that Raygoza's death should not have been anticipated was provided by Dr. Murphey. *Cf. id.* To the contrary, Vogt's own statement to the officers negates that premise. "They knew someone had to die for them to be able to go to Colorado" suggests that Vogt *clearly understood* that Raygoza either would be killed or could have been killed by their "plan."

Accordingly, the jury could have determined that Vogt was guilty as a conspirator under Texas Penal Code section 7.02(b) and as one criminally responsible for Garza's acts under Texas Penal Code section 7.02(a). *See* TEX. PENAL CODE ANN. § 7.02. Based on the evidence as a whole, we cannot conclude that Vogt suffered harm due to any alleged error in the charge

      b.      <u>Arguments of counsel</u>

We next examine the arguments of counsel at trial. *See Almanza*, 686 S.W.2d at 171.

---

[1] TEX. PENAL CODE ANN. § 7.03(b) provides as follows:

> If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

The State argued that Vogt was guilty of either intentionally causing the death of Raygoza while in the course of committing a robbery or he solicited, encouraged, directed, aided or attempted to aid James Garza to commit the capital murder. "So either he intentionally committed the death, or intentionally caused the death" or "[h]e encourage[d], solicit[ed], aid[ed] James Garza in the intentional killing of Mario Raygoza." Additionally, the State explained the co-conspirator theory.

> And what that says is if you guys agree to commit one felony, robbery, in the course or in the attempt of committing that robbery, another felony is committed, capital murder. And you should have anticipated that what you had conspired to do could have resulted in the death of that person or could have resulted in the capital murder. . . .

The defense focused on Vogt's state of mind and Dr. Murphey's testimony. Specifically, the defense argued that Vogt's mental disease and defects "were torturing him on that day when Mario Raygoza was killed. To the point where [Vogt] was not able to form the intent to kill Mario Raygoza and was not able to anticipate that Mario Raygoza would be killed as a result." The defense conceded that Vogt was guilty of aggravated robbery, and argued that was the only charge on which the jury should convict him. With regard to the capital murder charges, the defense argued the following: (1) there was no evidence that Vogt actually stabbed Raygoza and therefore Vogt was not guilty as a principal; (2) Vogt did not aid and abet, assist, or solicit Garza to commit the murder, instead Vogt gave Garza the knife in order to steal the car, not to kill Raygoza; and (3) with regard to conspiracy, Vogt could not have anticipated that when he intended to rob Raygoza with a knife, that Raygoza could be killed. Defense counsel explained the charge as it was written and explained to the jury how he interpreted the charge. Thus, based on the attorneys' closing remarks, there is nothing in the arguments of the parties to suggest the charge harmed Vogt in any manner.

c.       Entirety of the evidence and other relevant factors

As the State argued, Vogt was guilty from the very beginning. Vogt selected Raygoza because he did not know him well and Vogt felt that would make Vogt's actions easier. Vogt intentionally stole his grandmother's steak knife and brought the knife to the fight. Vogt called and arranged for Raygoza to pick up Vogt and then Garza. Vogt was the one directing Raygoza where to drive. Regardless of Dr. Murphey's opinion, Vogt's multiple recorded statements are evidence that he intended for Raygoza to be killed. Once Garza struck, Vogt joined in Raygoza's stabbing using a box-cutter. There is clearly sufficient evidence that Vogt understood his actions and helped plan the entire chain of events. As such, the entirety of the evidentiary record does not show that any alleged error in the charge harmed Vogt.

## F.       Conclusion

After reviewing the entire record, we conclude the evidence does not support that the jury was misled by the court's charge. Moreover, under an *Almanza* analysis, Vogt's rights were not harmed by any error in the court's charge. *See Almanza*, 686 S.W.2d at 171. Vogt's first issue is overruled.

### IMPROPER JURY ARGUMENT

Vogt next argues the State improperly informed the jury that the trial judge did not believe the instruction regarding the lesser included offense of murder. More specifically, Vogt argues he was denied due process and a fair trial by the State's improper argument that presumed the trial court's opinion.

## A.       The State's Closing Argument

State:       You're going to see that there's the lesser included offense of aggravated robbery. The Court charge also says that the Court isn't making any comments on the evidence. The Court is not endorsing anything in the charge. If it is raised by any evidence, no matter how credible, it has to come into the charge. The Court—just by the fact that

aggravated robbery is in the charge, does not mean that it's being endorsed by the Court.

Defense: I object to counsel trying to nullify the charge, Your Honor.

Court: Overruled. Continue.

State: It's not the Court endorsing or making a comment saying that's what she thinks it is. She has to include it. And what's the incredible evidence that it could be aggravated robbery? The nonsense that came out of that doctor who failed to mention, throughout the entire direct examination, that he had a cocaine problem at $30 a week for two years leading up to this, right. Explains a lot of the stuff that she said. But I know they're going to talk about that a lot more. But anyway, that what's called a lesser included offense.

But, you know, you start by—you know, you're here for capital murder. That's what you start with, okay. And I don't think it's going to take you long. I don't think you're going to get past that. I mean, it just—it couldn't be any clearer.

## B.   Proper Jury Argument

"[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *see also Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (same); *Coble v. State*, 871 S.W.2d 192, 204 (Tex. Crim. App. 1993) (same). When jury argument falls outside the approved areas, "it will not constitute reversible error unless [it] is extreme or manifestly improper . . . or injects new facts harmful to the accused into the trial proceeding." *Temple v. State*, 342 S.W.3d 572, 602–03 (Tex. App.—Houston [14th Dist.] 2010), *aff'd,* 390 S.W.3d 341 (Tex. Crim. App. 2013); *see Brown*, 270 S.W.3d at 570. In determining whether the prosecutor made an improper jury argument, the reviewing court considers the entire argument in context, and not merely isolated sentences. *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex. App.—El Paso 2001, pet. ref'd); *see also Dinkins*, 894 S.W.2d at 339.

Vogt asserts the State's argument was calculated to nullify the court's charge. *See McClory v. State*, 510 S.W.2d 932, 935 (Tex. Crim. App. 1974). Further, Vogt contends the State's actions were the exact type of behavior condemned by the Court of Criminal Appeals in *Dunbar v. State*, 551 S.W.2d 382 (Tex. Crim. App. 1977). In *Dunbar*, the prosecutor remarked as follows:

> Now let me talk to you about some of the things the Court charged you on. Now, understand that I know that [the other prosecutor] explained to you in Voir Dire the fact that you have things in [the charge] on self-defense and voluntary manslaughter, doesn't mean that the Court believes that is what happened.

The *Dunbar* court reversed the trial court holding "The statements both before and after the court's ruling were direct references to the trial court's beliefs about the case." *Dunbar*, 551 S.W.2d at 383.

Here, the comment was made during the State's attempt to explain a very complicated charge to the jury. The State contends it was trying to negate defense counsel's argument that the jury should convict on the lessor included offense of aggravated robbery. The State's argument was an attempt to explain to the jury that, even in light of the trial court's charge of the lesser included offense, the jury should conclude that Vogt was guilty of capital murder. Although we have difficulty parsing the difference between what the trial court "believes" and something "not being endorsed" by the trial court, in this case, the State appears to come perilously close to crossing the line. However, in the record before this court, there is no evidence that the State's argument was "extreme and manifestly improper" or that any alleged improper arguments were "a willful and calculated effort on the part of the state to deprive the appellant of a fair and impartial trial." *Wesbrook*, 29 S.W.3d at 115; *see Coble*, 871 S.W.2d at 204. Accordingly, the State's argument was not improper under the four prong test set forth in *Brown*. *See Brown*, 270 S.W.3d at 570.

### INDIGENT DEFENDANT ASSESSED ATTORNEY'S FEES

The record shows that on November 18, 2009, the trial court appointed counsel to represent Vogt. During the following three years, several different attorneys were appointed to represent Vogt for various hearings and motions. Vogt's current counsel was appointed to represent him on October 1, 2012 and the appointment was "to continue, (unless relieved by the court earlier, after a finding of good cause is entered on the record), until charges are dismissed, the defendant is acquitted, all post-trial motions are resolved, notice of appeal is perfected, or until relieved by the court or replaced by other counsel." This is the same counsel who currently represents him on appeal.

The record before this court does not contain an affidavit of indigency for appointment of counsel before the trial. *See* TEX. CODE CRIM. PROC. ANN. 26.05(g) (West Supp. 2013); *Wiley v. State*, 410 S.W.3d 313, 320 (Tex. Crim. App. 2013). Yet, the record establishes that court-appointed counsel represented Vogt at trial and on appeal. Accordingly, this court concludes that Vogt was indigent and unable to afford counsel. *See Wiley*, 410 S.W.3d at 320 (explaining a defendant previously found indigent is presumed to remain indigent); *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013) (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p)) ("[A] 'defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs.'"). The trial court erred in assessing attorney's fees against Vogt.

### CONCLUSION

Although we conclude the jury charge was not erroneous, even assuming error, Vogt was not harmed. *See Almanza*, 686 S.W.2d at 171; *see also Taylor*, 332 S.W.3d at 489; *Cathey*, 992 S.W.2d at 466. Additionally, in considering whether the State's jury argument was a summation or reasonable deduction of the evidence, an answer to opposing counsel's argument, or a plea for

law enforcement, we conclude the State's argument was not improper. *See Brown*, 270 S.W.3d at 570. However, the trial court erred in assessing attorney's fees as costs against Vogt. *See Wiley*, 410 S.W.3d at 320. We, therefore, reform the judgment and bill of costs to delete Vogt's requirement to pay attorney's fees, and we affirm the trial court's judgment as reformed.

Patricia O. Alvarez, Justice

PUBLISH