

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00078-CR
No. 02-21-00079-CR
No. 02-21-00080-CR

———————————————

NATHANIEL KYLE FURSTONBERG, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 415th District Court
Parker County, Texas
Trial Court Nos. CR19-0776, CR19-0777, CR19-0778

Before Kerr, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Kerr
Concurring Memorandum Opinion by Justice Walker

## MEMORANDUM OPINION

Appellant Nathaniel Kyle Furstonberg was convicted in one trial of three offenses: possession of four grams or more (but less than 200 grams) of methamphetamine with intent to deliver, possession of less than one gram of oxycodone, and possession of less than one gram of hydromorphone. Furstonberg was found guilty and received enhanced sentences of forty-five years for the methamphetamine offense and ten years each for the other two offenses.

On appeal, Furstonberg raises four points of error. First, he challenges the legal sufficiency of the evidence to show that he possessed hydromorphone. Second, Furstonberg complains that court costs were wrongly assessed in all of his judgments. Third, Furstonberg claims that the trial court erred in assessing reimbursement costs for his appointed attorney. Fourth, he argues that the trial court's assessed "time payment fee" was improper.

We overrule Furstonberg's sufficiency claim but sustain his three cost-related complaints. Accordingly, we affirm all three judgments as modified.

## I. Background

Two police officers with the City of Azle, Corporal Donald Gilbert and Officer Jason Castro, were patrolling in a marked car during the six-thirty p.m.-to-six a.m. shift. The officers pulled over a van with a malfunctioning license-plate light. The driver was Furstonberg. As Castro approached the driver's side of the van, Gilbert noticed an open alcoholic beverage in the center console. He also noticed a blue-

tinted plastic baggie containing crystalline residue at Furstonberg's feet, a residue that Gilbert believed to be consistent with methamphetamine. Castro detained Furstonberg outside the van.

Gilbert searched the van's center console. He discovered that the stereo was not completely installed and was easily pulled out (though still connected by its wiring harness). Behind the stereo, Gilbert saw a large baggie of what, again, appeared to be methamphetamine and eight pills—two orange and six green. Although Gilbert suspected that the powder in the baggie was methamphetamine, the officers did not know what the pills were. Castro called Texas Poison Control and described the shape, color, and imprints of the pills. From the information received, the officers presumptively determined that the pills were hydromorphone and oxycodone.

Furstonberg was charged with possession with intent to deliver four grams or more but less then 200 grams of methamphetamine, possession of less than one gram of oxycodone, and possession of less than one gram of hydromorphone. At trial, Jonathan Bishop—a drug chemist at the Tarrant County Medical Examiner's Office—testified. Bishop explained that he used a gas chromatograph spectrometer to identify the powder found in Furstonberg's car as more than 17 grams of methamphetamine. Similarly, he cut off part of one of the tablets, tested it, and determined that it was oxycodone.

For the remaining pills, Bishop had planned to test them but ultimately decided to rely on a visual identification. He explained, "Basically all of the pharmaceutical

3

tablets that come in, we compare them to a database of all of the drugs with the same markings." It was based on these comparisons to a database—one that Bishop considered a "reliable source"—that he ultimately determined that the pills were hydromorphone.

## II. Legal Sufficiency—hydromorphone tablet identification

In his first point of error, Furstonberg takes issue with the crime-lab chemist's testimony identifying the two orange pills as hydromorphone. According to Furstonberg, visual identification without a chemical test constitutes legally insufficient proof.

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's.

4

*Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Id.* at 448–49.

Furstonberg claims that Bishop's identification of the hydromorphone was nothing more than an "eyeball test," and that in the absence of actual drug testing the evidence that the pills were, in fact, hydromorphone was legally insufficient. Furstonberg relies for support on *Curtis v. State*, 548 S.W.2d 57 (Tex. Crim. App. 1977). In that case, the Court of Criminal Appeals held that the evidence was insufficient to show that a powdered substance was heroin where it had been subjected only to a field test that identified it as an opiate derivative, and an experienced narcotics officer had testified that in his expert opinion the substance was heroin.[1] *Id.* at 59. Thus, even an experienced officer could not be expected to look at a powder and be able to determine whether it was heroin. *See id.* ("However, we are unwilling to say that an experienced officer can look at a white or brown powdered substance and testify that it is heroin since morphine, codeine, paregoric, other

---

[1]The officer also testified that a lab chemist had told him that the substance was heroin, but the Court of Criminal Appeals dismissed this testimony as "hearsay evidence of no probative value." *Id.*

5

opiates, other controlled substances, and noncontrolled substances also appear in white or brown powdered form.").

The heroin-as-powder at issue in *Curtis* is different from the pills in Furstonberg's possession—unlike the powdered substance, the pills had a distinct shape and markings. When asked if he concluded that the pills were hydromorphone, Bishop explained:

> According to the pharmaceutical identifiers, it was. Basically all of the pharmaceutical tablets that come in, we compare them to a database of all of the drugs with the same markings. And it came back as hydromorphone.

In *Curtis*, by contrast, there was no identifying information available, nor was there any visual comparison between the alleged heroin and a known visual database. Indeed, the *Curtis* court recognized that where a substance has identifiable characteristics, an experienced officer's visual identification is sufficient. *Id.* ("This Court has held that an experienced officer may be qualified to testify that a certain green leafy plant substance is marihuana" because it "has different characteristics from other green leafy plant substances.").

Furstonberg relies on another case in which an item was identified as powdered cocaine with no reference to any chemical testing or pertinent visual identifiers. *See Steele v. State*, 681 S.W.2d 129, 131 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). In *Steele*, the evidence—consisting only of an officer's testimony that the defendant himself referred to the substance as cocaine—was insufficient to prove that the

6

powder was cocaine. *Id.* But here Bishop himself identified the pills possessed by Furstonberg as hydromorphone; he did not rely on an extrajudicial admission. Moreover, unlike the powdery substances at issue in *Curtis* and *Steele*, the pills in Furstonberg's possession have distinctive characteristics that allowed Bishop to identify them using a database, which Bishop described as a "reliable source of information." *See Pineda v. State*, No. 13-13-00574-CR, 2015 WL 5311237, at *5 (Tex. App.—Corpus Christi–Edinburg Sept. 10, 2015, no pet.) (mem. op., not designated for publication) (holding that drug-evidence custodian's testimony comparing pill shapes to information on known website constituted sufficient evidence the pill was hydrocodone where custodian also testified that website was a "reliable source to identify drugs").

To the extent Furstonberg argues that chemical testing must always be relied upon even if a substance can be identified through a visual database, we reject his contention. *See Woods v. State*, No. 14-07-00940-CR, 2009 WL 1975547, at *8 (Tex. App.—Houston [14th Dist.] July 9, 2009, pet. ref'd) (mem. op., not designated for publication) ("Neither [*Curtis* nor *Steele*] stand for the proposition that chemical testing is absolutely necessary to prove guilt beyond a reasonable doubt.").

Bishop's testimony was legally sufficient to establish that the pills Furstonberg possessed were indeed hydromorphone. Therefore, we overrule Furstonberg's first point of error.

### III. Duplicative court costs

In his second point of error, Furstonberg complains that all three judgments erroneously assess duplicative court costs against him. According to Article 102.073 of the Code of Criminal Procedure,

> (a) In a single criminal action in which a defendant is convicted of two or more offenses or of multiple counts of the same offense, the court may assess each court cost or fee only once against the defendant.
>
> (b) In a criminal action described by Subsection (a), each court cost or fee the amount of which is determined according to the category of offense must be assessed using the highest category of offense that is possible based on the defendant's convictions.

Tex. Code Crim. Proc. Ann. art. 102.073. Furstonberg argues that because he was prosecuted for three cases in a single criminal action, costs should have been assessed only in the most serious case—possession of methamphetamine with intent to deliver. The State agrees that it is appropriate to assess costs only regarding the methamphetamine conviction.

We agree with both Furstonberg and the State. Because Furstonberg's cases were prosecuted in a single criminal action, Article 102.073 applies, and costs should not have been assessed in all three judgments. *See White v. State*, No. 02-19-00079-CR, 2020 WL 241966, at *1 (Tex. App.—Fort Worth Jan. 16, 2020, no pet.) (mem. op., not designated for publication); *Hurlburt v. State*, 506 S.W.3d 199, 203–04 (Tex. App.—Waco 2016, no pet.).

8

## IV. Reimbursement for appointed counsel

In his third point of error, Furstonberg complains that the trial court improperly assessed court-appointed attorney's fees against him. The State responds that the counsel-fees-reimbursement issue is not "ripe." We agree with Furstonberg.

Furstonberg filed with the trial court an "Affidavit of Indigency and Application for Court Appointed Lawyer." This affidavit showed monthly income of zero and monthly expenses of $900. An order appointing counsel and signed by the trial court contained the following:

INDIGENCY WITH REIMBURSEMENT
The court finds the defendant is entitled to the appointment of counsel because _____ defendant is indigent; ____√_____ it is in the interest of justice. The court further finds defendant presently has financial resources and/or an ability to pay all or part of the cost of legal services and related expenses to be provided by this order. It is therefore ordered that the defendant is appointed counsel in this matter. It is further ordered that defendant is ordered to contribute to the cost of the legal services and related expenses as may be ordered by the court.

Counsel appointed to represent a defendant in a criminal proceeding must be paid a reasonable attorney's fee for performing certain services. Tex. Code Crim. Proc. Ann. art. 26.05(a). Article 26.05(g) provides:

> If the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided to the defendant in accordance with Article 1.051(c) or (d), including any expenses and costs, the judge shall order the defendant to pay during the pendency of the charges or, if convicted, as a reimbursement fee the amount that the judge finds the defendant is able to pay.

*Id.* art. 26.05(g). A defendant who is determined by the trial court to be indigent is presumed to remain indigent for the remainder of the proceedings unless a material change in the defendant's financial circumstances occurs. *Id.* art. 26.04(p). "[T]he

defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees." *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010). Thus, in the absence of any indication that the defendant's financial status has changed, the evidence will not support the imposition of attorney's fees. *Wiley v. State*, 410 S.W.3d 313, 317 (Tex. Crim. App. 2013).

Here, nothing in the record indicates that appellant's financial circumstances materially changed after the trial court appointed counsel to represent him.[2] *See* Tex. Code Crim. Proc. Ann. art. 26.04(p); *Johnson v. State*, 405 S.W.3d 350, 355 (Tex. App.—Tyler 2013, no pet.); *see also Wiley*, 410 S.W.3d at 317 ("In this case, because the trial court failed to find that the appellant's financial status changed after initially finding the appellant to be indigent, the record is insufficient to support the order to pay the attorney fees stemming from his court appointed representation during the initial plea proceedings."). Accordingly, there is no factual basis to support a determination that Furstonberg can pay the fees for his appointed counsel.

The State argues that, as a specific amount has not been assessed against Furstonberg, his complaint is not "ripe," and this point of error should be overruled. We have, however, already decided in an indistinguishable case that such a complaint

---

[2]The trial court never explicitly found that Furstonberg was indigent. But, as court-appointed counsel represented Furstonberg at trial and on appeal, we may conclude that he was indigent and unable to afford counsel. *See Vogt v. State*, 421 S.W.3d 233, 246 (Tex. App.—San Antonio 2013, pet. ref'd).

is indeed ripe. *See Guevara v. State*, No. 02-21-00069-CR, 2022 WL 1042919, at *2 n.1 (Tex. App.—Fort Worth Apr. 7, 2022, no pet.) (mem. op., not designated for publication) (citing *Jones v. State*, 428 S.W.3d 163, 172 n.2 (Tex. App.—Houston [1st Dist.] 2014, no pet.)).

We conclude that the evidence is insufficient to support the order requiring appellant to pay the attorney's fees for his court-appointed defense counsel. *See Cates v. State*, 402 S.W.3d 250, 251–52 (Tex. Crim. App. 2013); *Johnson*, 405 S.W.3d at 355. We therefore modify the trial court's judgment to delete the assessment of attorney's fees against appellant.

## V. Time payment fee

In his fourth point of error, Furstonberg complains that the trial court wrongfully assessed a "Time Payment Fee" in each of his convictions in the amount of $15 each. The State agrees, and so do we, that these payments should not be assessed against Furstonberg.

By statute, a person convicted of a felony must pay a $15 fee if he "pays any part of a fine, court costs, or restitution on or after the 31st day after the date on which a judgment is entered assessing the fine, court costs, or restitution." *See Prescott v. State*, No. 02-17-00158-CR, 2019 WL 2635559, at *5 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op., not designated for publication). The Court of Criminal Appeals has further concluded that a trial court's assessment of the time-payment fee

11

while an appeal is pending is premature. *Dulin v. State*, 620 S.W.3d 129, 133 (Tex. Crim. App. 2021).

Here, the trial court included the time-payment fee in its bill of costs and ordered that it "shall be removed if the fine and court costs are paid in full prior to the 31st day after the date of Judgment." But this is "before the condition triggering the assessment of the [fee]—late payment—could have occurred." *See Prescott*, 2019 WL 2635559, at *5. The $15 time-payment fee should therefore be entirely struck without prejudice to the fee being assessed later if, more than thirty days after the issuance of the appellate mandate, Furstonberg has failed to completely pay any of the court costs that he owes.[3] *See id.*; *Webster v. State*, No. 07-20-00248-CR, 2021 WL 1899359, at *5 (Tex. App.—Amarillo May 11, 2021, no pet.) (mem. op., not designated for publication) (applying *Dulin* to modify judgment to delete time-payment fee assessed in a community-supervision revocation case).

## Conclusion

Having found the evidence legally sufficient in cause number CR19-0778, we affirm all three judgments. We modify the judgments in cause numbers CR19-0777 and CR19-0778 to delete all the court costs. Further, we modify the judgments

---

[3]Given our ruling regarding duplicative court costs in Furstonberg's second point of error, the only time-payment fee that might survive more than thirty days after the appellate mandate is the fee assessed in cause number CR19-0776 (possession of methamphetamine with intent to distribute). *See supra* at 9.

in all three cause numbers to delete both the time-payment fee and the reimbursement cost of an appointed attorney.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  October 6, 2022

13