**Kenneth Owen JAYCON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 60514.**

Court of Criminal Appeals of Texas, En Banc.

June 15, 1983.

Clifford W. Brown, Mike Brown, Ralph H. Brock, Lubbock, for appellant.

Alton R. Griffin, Dist. Atty. and Hollis Browning and John Fouts, Asst. Dist. Attys., Lubbock, Robert Huttash, State's Atty., and Alfred Walker, Asst. States Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This appeal is from a conviction for murder, where the punishment was assessed by

the jury at twenty-five (25) years' imprisonment.

On appeal appellant challenges the sufficiency of the evidence to sustain the conviction, particularly contending that the evidence is insufficient to corroborate the testimony of the three accomplice witnesses. He also complains of the admission of evidence of accessorial conduct to show he was a party to the offense charged; that the court misdirected the jury in its charge on the law of parties despite timely objection; that the court erred in failing to charge on circumstantial evidence; that the court erred in overruling his motion for new trial based on newly discovered evidence.

Omitting the formal parts, the indictment alleged the appellant Jaycon on or about December 29, 1977 "did then and there intentionally and knowingly cause the death of an individual, William Drew Young, III, by shooting him with a firearm . . . ."

Also indicted for the murder of Young were Jim Gordon, Ken Herndon, Tico Lowrance, Homer Lowrance, Jr., and Janice Payne.

On December 24, 1977, about 10:05 p.m., Trooper Michael A. Humphreys, Department of Public Safety, received a radio broadcast concerning a car on fire on Avenue P, three-quarters of a mile south of Farm to Market Road 1585 in Lubbock County. Humphreys proceeded to the location and upon arrival noticed a small fire still burning in the upper portion of the automobile. Two men were standing near the car, later determined to be bystanders. The open trunk of the automobile contained a male human body covered with blood. He had been shot. The body was identified as William Drew Young, III. The autopsy later revealed Young bled to death from a bullet wound to the right jaw, cheek and neck. The car in which the body was found was shown to have been registered to Young.

Department of Public Safety Trooper Max Gunn was on routine patrol on December 24, 1977. At approximately 11:50 p.m. while traveling on Quirt Avenue and approaching the intersection with Farm to Market Road 1585, he observed a small fire on the south side of 1585. A car was parked next to it. As Gunn turned onto 1585, the car departed. Approaching the fire, Gunn saw a cardboard box burning. Gunn then followed the car several miles on 1585 and then onto a dirt road before he was able to stop the vehicle. Appellant was the passenger and Ken Herndon was the driver. Both were intoxicated and arrested. Both were described as neatly dressed. The cardboard box was shown to contain clothing, but it was not traced to anyone.

Tico Jean Ann Lowrance,[1] a co-indictee, testified she had been promised by the State she would never go to prison for the alleged offense. She related she was married to Homer Lowrance, Jr., and met the deceased, Young, in October, 1977, at Tico's No. 1, a burlesque club and restaurant in Lubbock, which she owned. Tico stated she and Homer had a business interest in the Salt River Saloon in Lubbock. She managed the club for Gordon and got the larger part of a 60–40 split of the profits. She hired Young as a bartender for the Salt River around Thanksgiving, 1977.

On December 21, 1977, when she went to close the Salt River for the night, she found Young was not there, and Janice Payne told her Young had taken something from the cash register. She discovered approximately $350.00 was missing.

On December 24, 1977, about 5 p.m., she was home with her husband and Janice Payne when she received a call from the Salt River. The bartender told her Young was there threatening "to rob it again." The bartender sounded scared.[2] Tico called Jim Gordon and talked to his wife, Sandy. She called Bill Zoback, a bouncer at one of her clubs, and asked him to meet her at the Salt River. Tico, Homer and Janice Payne arrived at the club about 5:15 p.m. Tico called the Jokers Wild Club and talked to

---

1. The witness will hereafter be referred to simply as "Tico."

2. The conversation was elicited on cross-examination.

Young. He told her he was becoming a member of the "Banditos" that day and he was going to bring some of his "family" to the Salt River with him; that a man with a machine gun was on the roof of a building across the street, and that Mr. Gayland, lessor of the premises, was going to come with "them" and take over the bar (Salt River).[3] Tico again called Jim Gordon. His wife, Sandy, came to the bar. Young called back. Thereafter Tico went outside and told Sandy. Jim Gordon arrived about this time. Sandy left. Arriving with Gordon or about the same time was Ken Herndon and the appellant Jaycon.

Gordon came into the club and sat with Tico and Homer. Herndon and appellant sat at another table with Janice Payne. Someone came in and said Young was outside and Tico saw him in a car. Gordon told Herndon and appellant to go out and get him. Later Tico heard a knock on the side door and a waitress opened it, and Herndon and appellant brought Young into the club. They were on either side of Young. Young "looked like he was out of it." They came to the front and Gordon began cursing Young and hitting him about the face and head with his fists. Someone suggested "the office" and Young was taken there and placed on a couch. Tico, Homer and Janice Payne went into the office with Gordon, Herndon and the appellant. Gordon continued to curse and beat on Young, who said he didn't know who Gordon was or anything about the money. Tico asked Gordon to stop. Young was bleeding and incoherent. Jaycon, following Tico's request, said, "Yeah, man, he is wiped out." Tico knew Young had been drinking. She smelled alcohol on his breath.

Hoping to gain time, Tico sent the appellant Jaycon for drinks and began to ask Young why he took the money, if he needed money and to tell the truth. Young asked her for help. Gordon began to hit Young again and said, "Well, let's take the son of a bitch out to the woods and do what we came here to do," or "Something like that." Herndon intervened and said, "No, Jim.

Don't you know you own this town, and you can't afford to get in any trouble." Herndon then pulled a gun. Gordon tried to take it away and said, "Stop." Herndon replied, "No, you aren't going to get involved in this."

Herndon pointed the gun at Young and told him he would give him to the count of three to tell where the money was, ". . . or I will blow your head off." At the count of two the gun went off and blood gushed from the back of Young's head onto the walls. Payne "peed" in her pants, and Homer closed his eyes. Herndon then pointed the gun at Homer and asked Gordon who he and Tico were, saying he knew Payne. Gordon assured him they were "okay" and to leave them alone.

Jaycon then returned to the office with the drinks and sat them on the desk. He then sat on the couch and grabbed Young's leg, asking, "How does it feel to be dead, old boy? Do you like being dead? Would you like to go shoot some pool? Come on, boy, get up. Let's go. Ah, come on. Don't be like that. Let's go have some fun."

Appellant then picked up one of Young's legs and crossed it over the other, and then played with Young's hand for awhile. Tico told him to stop. She then wrapped a jacket around Young's head.

Gordon said something about getting the body out of the room. Herndon instructed appellant to get Young's car, and Herndon put Young's body over his shoulders and went out the door.

Gordon sent Payne for plastic bags. Tico began to drink and clean up the club. The couch was dismantled and placed in bags. Tico called her brother and he and Homer took the plastic bags away. Gordon left. Tico and Payne went first to the homes of Pamela Eggers and Sherry Lindell, employees who had been in the club at the time to be sure they didn't do anything irrational. Tico then went home, and she and Homer washed their clothes, and then went to the Saddle Bronc Club.

---

**3.** This conversation was also elicited on cross-examination.

Tico denied knowing that Gordon intended to assault Young when he was brought into the club, though she had heard someone say they were going "to beat the shit out of him." She did not have any idea that anyone would be killed.

Homer Lowrance, Jr.'s testimony was much the same as that of his wife.[4] He related Gordon arrived at the Salt River with Herndon and the appellant. He knew appellant but had never seen Herndon before. He observed that Herndon had a gun. He later saw it in Herndon's lap after Young was taken to the club office. There he said Gordon threatened to blow Young's head off and asked Herndon for the gun and Herndon refused, telling Gordon he would take care of it. The gun went off at the count of two. After the shooting, Herndon removed the body and Homer saw the appellant standing outside beside Young's car. Homer and Tico's brother took the plastic bags to a roadside park north of Tahoka and burned them in a barbeque pit. At home he washed his clothes and then went to the Saddle Bronc Club.

Janice Payne, also promised immunity, related she was a bartender, "manager really" at the Salt River on the date in question. Her testimony was similar to that of Tico. She had known the appellant "quite a while." After the shooting in the office, she told the other employees to close the club.

Sherry Ann Lindell, a waitress at the Salt River at the time in question, testified Gordon came in with two men she had never seen before. Later about 7:30 p.m. she heard a knock on the east door. She opened it and the two men came in with Young between them. One of the two men with Young had a gun. Young looked "stoned" or "scared." Gordon began shoving Young and they went into the office. Later she heard a gunshot. Tico came out and told her everyone was to leave the club. When she came to work two days later, she observed a piece of carpet had been cut in front of the office doorway, and the office walls had been repainted a different color.

Pamela Ann Eggers, a manager at the Salt River, testified that when she arrived at the club at 6 p.m. on December 24th, the principals heretofore mentioned were all there. She knew the appellant. She left to take a girlfriend to her mother's house. When she returned she saw Young outside the club and told Tico when she entered the club. Gordon then talked to appellant and the "other guy" and they got keys and went out the back door and brought Young into the club. Young was taken to the office. Later she heard a gunshot. Janice Payne came out and said the club was closing. Two days later she observed a piece of carpet missing near the office doorway.

Appellant did not testify. While several witnesses testified they knew him, that knowledge was not explored by either party. While appellant arrived at the club with or at the same time as Gordon and Herndon, there was no evidence of any prior relationship of the appellant with Gordon or Herndon, or the deceased, Young.

As can be seen, the State's theory of prosecution was that the co-defendant Herndon was the principal actor who shot and killed Young, and that the appellant, who was not present at the time of the shooting, was guilty as a party.

The trial court instructed the jury on the law of parties and criminal responsibility as follows:

"3.

"All persons are parties to an offense who are guilty of acting together in the commission of an offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

"A person is criminally responsible for an offense committed by the conduct of

4. He too stated he had been promised by the State that he would not go to prison for the alleged offense.

another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, direct, aids, or attempts to aid the other person to commit the offense.

"Mere presence alone will not constitute one a party to an offense.

"Each party to an offense may be charged with commission of the offense.[5]

Then in applying the law to the facts, the jury was instructed:

"4.

"Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that the defendant, KENNETH OWEN JAYCON, acting alone or with another or others as a party to the offense, on or about the 24th day of December, 1977, in the County of Lubbock and State of Texas, as alleged in the indictment, did then and there intentionally and knowingly cause the death of an individual, William Drew Young, III, by shooting him with a firearm, you will find the Defendant guilty of the offense of murder and so say by your verdict.

"If you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'not guilty.'"

Pursuant to Articles 36.14 and 36.15, V.A. C.C.P., appellant timely objected to the charge and requested a charge applying the law of parties and criminal responsibility to the facts.

The appellant objected to paragraph 4 of the charge as a whole for failure to make proper application of the law "to the facts in this case." The appellant further specially requested a charge as follows:

"Now, if you find from the evidence beyond a reasonable doubt that Kenneth Wayne Herndon, in Lubbock County, Texas, on or about the 24th day of December, 1977, did intentionally and knowingly cause the death of William Drew Young, III by shooting him with a gun, and that the Defendant Kenneth Owen Jaycon * * * acting with intent to promote or assist the commission of the offense by Kenneth Wayne Herndon by encouraging, directing, aiding or attempting to aid Kenneth Wayne Herndon to commit the offense of shooting William Drew Young, III, then you will find the Defendant Kenneth Owen Jaycon guilty of murder as charged in the indictment."

In *Romo v. State,* 568 S.W.2d 298 (Tex.Cr. App.1978) (opinion on State's Motion for Rehearing), the court stated:

"In circumstances where a defendant, if guilty at all, is guilty as a party, the court should properly apply the law of parties to the facts of the case, but the failure to do so is not reversible error unless there is a timely and sufficient objection." See also *Bowers v. State,* 570 S.W.2d 929 (Tex.Cr.App.1978).

---

5. V.T.C.A., Penal Code, § 7.01, provides:

"(a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.

"(b) Each party to an offense may be charged with commission of the offense.

"(c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice."

V.T.C.A., Penal Code, § 7.02, provides:

"(a) A person is criminally responsible for an offense committed by the conduct of another if:

"(1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;

"(2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or

"(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

"(b) If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy."

In the instant case the appellant made a timely and proper objection to the court, and the error, if any, was preserved.

In *Apodaca v. State,* 589 S.W.2d 696 (Tex. Cr.App.1979), it was held that the court erred in failing to apply the law of criminal responsibility to the facts of the case, over appellant's objection and requested charge, citing *Savant v. State,* 544 S.W.2d 408 (Tex. Cr.App.1978); *McCuin v. State,* 505 S.W.2d 827 (Tex.Cr.App.1974).

In *Apodaca* the court stated:

"No evidence in the instant case supported submission of the case on the theory that appellant was the primary actor. The State's theory of prosecution in the instant case was that the co-defendant, Lewis, as the driver of the car, was the principal actor and that appellant was guilty, if at all, as a party because he solicited, encouraged, directed, aided or attempted to aid the co-defendant, Lewis. Thus, the trial court erred in refusing appellant's request for a charge to so instruct the jury. *McCuin v. State,* supra; *Savant v. State,* supra. * * *

"The State nevertheless contends that since the court charged the jury on the abstract law of parties (although reference was made to 'principals' rather than 'parties'), and since the jury was instructed to find whether appellant caused the deceased's death 'as a principal,' this was sufficient. We do not agree. This reference to the law of parties, contained in the paragraph applying the law to the facts, was not sufficient to require the jury to find whether Lewis, the driver of the vehicle, caused the deceased's death and whether appellant was criminally responsible for those acts of Lewis. Nowhere in the charge is the jury required to find that Lewis committed any criminal acts, for which appellant could be held responsible, if at all, because of his

encouragement, assistance, etc., of those acts.

"Accordingly, the judgment is reversed and the cause remanded."

See also and cf. *Rasmussen v. State,* 608 S.W.2d 205 (Tex.Cr.App.1980).

■ In the instant case, as in *Apodaca,* no evidence supported submission of the case on the theory that the appellant Jaycon was the primary actor. The State's theory was that the co-defendant Herndon was the principal actor and that the appellant was guilty, if at all, as a party because he solicited, encouraged, directed or aided or attempted to aid the co-defendant Herndon. In refusing to respond to the objection and special requested charge, the court reversibly erred. *Apodaca v. State,* supra. The charge given was not sufficient to require the jury to find whether Herndon caused the death of Young, the deceased, and whether appellant was criminally responsible for the acts of Herndon. The judgment must be reversed.

In light of the decisions in *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), we will consider the sufficiency of the evidence question prior to remand.

■ Appellant contends the evidence is insufficient to corroborate the accomplice witnesses. He relies upon Article 38.14, V.A.C.C.P., and notes that one accomplice witness cannot corroborate another. *Chapman v. State,* 470 S.W.2d 656 (Tex.Cr.App. 1971). Applying the test discussed in *Edwards v. State,* 427 S.W.2d 629 (Tex.Cr.App. 1968),[6] and eliminating from consideration the testimony of the three accomplice witnesses, Tico Lowrance, Homer Lowrance and Janice Payne, we conclude that there was other evidence independent of that of the accomplice witnesses tending to connect

---

6. In *Edwards* the court wrote:

"The test as to the sufficiency of the corroboration is to eliminate from consideration the evidence of the accomplice witness and then to examine the evidence of other witnesses with the view to ascertain if there be inculpatory evidence, that is evidence of in-

criminating character which tends to connect the defendant with the commission of the offense. If there is such evidence, the corroboration is sufficient; otherwise it is not." See also *Dillard v. State,* 550 S.W.2d 45 (Tex. Cr.App.1977).

the appellant with the offense committed. Article 38.14, V.A.C.C.P.[7] *Paulus v. State,* 633 S.W.2d 827, 847 (Tex.Cr.App.1981) (Opinion on rehearing adopting original dissenting opinion).

We need not consider appellant's other grounds of error. The judgment is reversed and the cause remanded.

---

7. Article 38.14, V.A.C.C.P., reads:

"A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."