ACCEPTED
04-14-00181-CR
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
5/7/2015 3:14:22 PM
KEITH HOTTLE
CLERK

NO. 04-14-00181-CR

---

**IN THE COURT OF APPEALS
FOR THE FOURTH JUDICIAL DISTRICT
SAN ANTONIO, BEXAR COUNTY, TEXAS**

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
5/7/2015 3:14:22 PM
KEITH E. HOTTLE
Clerk

---

**MICHAEL RIVAS
APPELLANT**

**VS.**

**STATE OF TEXAS,
APPELLEE**

---

**APPEAL FROM THE 38TH JUDICIAL DISTRICT COURT
OF MEDINA COUNTY, TEXAS, CAUSE NO. 12-04-10954-CR**

**THE HONORABLE CAMILE G. DUBOSE, PRESIDING**

---

**BRIEF OF APPELLEE, STATE OF TEXAS**

---

**Submitted by:**

**DANIEL J. KINDRED
38TH JUDICIAL DISTRICT ATTORNEY
MEDINA COUNTY, TEXAS**
3102 Avenue G
Hondo, Texas 78861
Telephone: (830) 741-6188
Facsimile: (830) 741-6033

By: _/s/ Christina Busbee_

     **CHRISTINA BUSBEE**
     State Bar No. 00797819
     **ASSISTANT DISTRICT ATTORNEY**

**ORAL ARGUMENT NOT REQUESTED**

i

## IDENTIFY OF THE PARTIES AND COUNSEL

The following is a complete list of all parties at the trial court as well as the names of all trial and appellate counsel.

### Parties

Appellant                                                    Appellee

**MICHAEL RIVAS**                                            **STATE OF TEXAS**

### Trial Counsel

Honorable Edward F. Shaughnessy, III
State Bar No. 18134500
Attorney at Law
206 East Locust
San Antonio, Texas 78212


**ATTORNEY FOR DEFENDANT**

Honorable Daniel J. Kindred
38th Judicial District Attorney
State Bar No. 24010682
Honorable Christina Busbee
Assistant District Attorney
Border Prosecutor
State Bar No. 00797819
3102 Avenue G
Hondo, Texas 78861
Honorable Mark D. Kimball
Regional 2 Counsel
Border Prosecution Unit
State Bar No. 11418030
1901 Bob Bullock Loop
Laredo, Texas 78043

**ATTORNEYS FOR STATE**

### Appellate Counsel

Honorable Michael C. Gross
State Bar No. 08534480
Gross & Esparza, P.L.L.C.
106 South St. Mary's Street, Suite 260
San Antonio, Texas 78205


**ATTORNEY FOR APPELANT**

Honorable Daniel J. Kindred
State Bar No. 24010682
38th Judicial District Attorney
Honorable Christina Busbee
State Bar No. 00797819
Assistant District Attorney
Border Prosecutor
3102 Avenue G
Hondo, Texas 78861

**ATTORNEYS FOR APPELLEE**

ii

# TABLE OF CONTENTS

PAGE

PARTIES ………………………………………………………………………ii

TABLE OF CONTENTS…………………………………………………...……iii

INDEX OF AUTHORITIES…………………..……………………………….……iv

STATEMENT OF THE CASE……………………..………………………..……..1

ISSUES PRESENTED…………………………………………………….......2

STATEMENTS OF FACTS…………………………………………………………2

SUMMARY OF THE ARGUMENT………………………..……………………...……..10
.
ARGUMENT AND AUTHORITIES…………………………………………12

ISSUE NUMBER ONE…………………………………………………….……12

      **THE TRIAL COURT DID NOT ERR IN ITS CHARGE TO THE
      JURY IN APPLYING THE LAW OF SELF-DEFENSE**

ISSUE NUMBER TWO…………………………………………………..…..17

      **THE TRIAL COURT DID NOT ERR IN ITS CHARGE TO THE
      JURY IN ITS APPLICATION OF THE LAW OF PARTIES**

ISSUE NUMBER THREE……………………………………………...…….22

      **THE TRIAL COURT DID NOT ERR IN ASSESSING ATTORNEY'S
      FEES TO THE JUDGMENTS IN THAT THE JUDGMENTS
      WERE TO REFLECT THAT TIME AND MONEY WERE TO RUN
      CONCURRENTLY**

PRAYER……………………………………………..………………………..23

CERTIFICATE OF SERVICE…………………………………………………24

## INDEX OF AUTHORITIES

STATE CASE LAW                                                                 Page

*Almanza v. State,* 686 S.W. 2d 157 (Tex. Crim. App. 1985)                     12, 21

*Barrera v. State*, 951 S.W. 2d at 153, 156 (Tex. App. – Corpus Christi 1997)  13, 14

*Barrera v. State,* 982 S.W. 2d 415 (Tex. Crim. App. 1998)              12, 13-14, 17

*Barrera v. State*, 10 S.W. 3d 743, 745 (Tex. App. – Corpus Christi 2000, no pet.)   13, 16-17

*Greene v. State,* 240 S.W. 3d 7, 15 (Tex. App. – Austin 2007, no pet.)        13

*Jaycon v. State,* 651 S.W. 2d 803 (Tex. Crim. App. 1983)                      19-20

*Jones v. State,* 815 S. W. 2d 667, 670 (Tex. Crim. App. 1991)                13

*Ladd v. State,* 3 S.W.3d 547, 564 (Tex. Crim. App. 1999)                      20

*Linden v. State,* 347 S.W.3d 819, 823 (Tex App. – Corpus Christi 2011, pet. ref'd)   17

*Mann v. State,* 964 S.W. 2d 639, 642 (Tex. Crim. App. 1998)                   18

*Marvis v. State,* 36 S.W.3d 878, 880 (Tex. Crim. App. 2001)                   18

*Mayer v. State,* 309 S.W. 3d 552, 556 (Tex. Crim. App. 2010)                  13, 22

*Neal v. State,* 256 S. W. 3d 264, 278 (Tex. Crim. App. 2008)                  21

*Vasquez v. State,* 389 S.W. 3d 361 (Tex. Crim. App. 2012)                     21

*Vega v. State,* 394 S.W. 3d 514, 516 (Tex. Crim. App. 2013)                   12

*Vogt v. State*, 421 S.W. 3d 233, 239 (Tex. App. – San Antonio, 2013, no pet. h.)   17-18, 20-22

*Wiley v. State*, 410 S.W. 3d 313, 317 (Tex. Crim. App. 2013)                  22-23

STATE STATUTUES

Tex. Penal Code Ann. § 2.03 (c) (Vernon 2011)                                 12

Tex. Penal Code Ann. § 2.03 (d) (Vernon 2011)                                 12, 15

Tex. Penal Code Ann. §7.01(a) (Vernon 2011)                                   20

iv

Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2011)     20

Tex. Penal Code Ann. § 9.31 (Vernon 2011)     15

Code Crim. Proc. Ann. art. 26.05(g) (Vernon 2011)     22

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to the Texas Rules of Appellate Procedure, the Appellee does not request oral argument in this case.

## STATEMENT OF THE CASE

The Appellant was indicted on or about April 10, 2012, in Cause Number 12-04-10956-CR with the offense of murder and in Cause No. 12-04-10957-CR with the offense of aggravated assault with a deadly weapon alleged to have occurred on the 15th day of October 2011 (I C.R. at 30, 11). The appellant was indicted on May 7, 2012 in Cause No. 12-04-10994-CR with the offense of criminal conspiracy alleged to have occurred on the 15th day of October 2011 (I C.R at 110). These indictments were consolidated by the trial court on June 6, 2013 (I C.R. at 30). The Appellant was consolidated for trial with the co-defendant, Leonardo Rivas, on August 6, 2013, under Cause No. 12-04-10954-CR (I C.R. at 113). The Appellant was tried on all three indictments beginning on January 13, 2014, before a jury (IV R.R. at 1). On January 22, 2014, the jury returned a verdict of guilty on all three indictments (I C.R. at 507-50, IX R.R. at 77-78). On January 23, 2014, the jury assessed punishment of life in the Texas Department of Corrections on the murder charge, the aggravated assault with deadly weapon charge and the criminal conspiracy charge. No fine was assessed by the jury (I C.R. at 519-520, X R.R. at 35-38).

A motion for new trial was filed by the appellant on February 13, 2014, and was overruled by the trial court on March 3, 2014, in each case. (II C.R. 564-569). Notice of appeal was timely filed (II C.R. at 546-548).

1

ISSUES PRESENTED

ISSUE NUMBER ONE……………………………………………………………14

**THE TRIAL COURT DID NOT ERR IN ITS CHARGE TO THE
JURY IN APPLYING THE LAW OF SELF-DEFENSE**

ISSUE NUMBER TWO…………………………………………………………..21

**THE TRIAL COURT DID NOT ERR IN ITS CHARGE TO THE
JURY IN ITS APPLICATION OF THE LAW OF PARTIES**

ISSUE NUMBER THREE………………………………………………………..27

**THE TRIAL COURT DID NOT ERR IN ASSESSING ATTORNEY'S
FEES TO THE JUDGMENTS IN THAT THE JUDGMENTS WERE TO
REFLECT THAT TIME AND MONEY WERE TO RUN CONCURRENTLY**

## STATEMENT OF FACTS

On or about October 14, 2011, the appellant, Michael "Mikeo" Rivas, his brother, Leonardo "Lenny" Rivas, and Adriana Benavides were hanging out together that day in Adriana's parents' black Expedition. Appellant had only been out of the Texas Department of Corrections Substance Abuse Facility for three (3) days and Leonard Rivas was on pre-trial release for a charge of manufacture delivery of a controlled substance, 4-200 grams by the 38th Judicial District Court (VIII R. R. at 20-21, IX R. R. at 114-119, XII). On October 14, 2011, Johnny Joe Flores, Margie Gonzales and Janie Aguilar began a 2:00 p.m. to 1:00 a.m. shift at Villa's Restaurant in Hondo, Texas (IV R. R. at 28, 155, VII R. R. at 143). Leonardo Rivas, Adrianna Benavides and the appellant had dinner at Villa's restaurant at approximately 5:30 p.m. (IV R. R. at 45, 163, 197, VII R. R. at 211). Later on October 14, 2011, Leonardo Rivas, Adriana Benavides and appellant went to H.E.B. to buy some beer and then they went to a birthday party at 2300 Cedar Street in Hondo, Texas (VII R. R. at 5-11, 212-213). While at the party on Cedar Street, the appellant and Adriana Benavides received calls and text messages from Eusebio

2

"Chevio" Luna (VII R. R. at 10, 214-215). Eusebio "Chevio" Luna was a member of the Mexican Mafia (VI R. R. at 194). Chevio wanted to talk to Adriana Benavides and appellant about cocaine that Chevio believed had been stolen by Adriana (VII R. R. at 10, 222). Adriana Benavides and appellant left the party on Cedar Street and along, with Adrienne Lopez, drove in the black Expedition to a park on 18th Street in Hondo, Texas, to meet with Chevio Luna (VII R. R. at 12-13, 222). This park was right across the street from a house that belonged to Armando Garcia. When they arrived there were a number of people outside of the house across the street from the park (VII R. R. at 13). It was common knowledge that a number of people lived at the house on 18th Street across from the park and that a number of people congregated there (VIII R. R. at 11-12, 110-111). Standing outside of the house when Adriana Benavides, Adrienne Lopez and the appellant arrived was Chevio Luna. When they arrived at the park on 18th street, Adrienne Lopez got off the Expedition and went across the street inside the house (VII R. R. at 13, 17). At first, Chevio and the appellant engaged in an argument, but at some point the argument ceased and the parties looked like they were shaking hands (VII R. R. at 14-15). At that point, Adriana Benavides exited the vehicle (VIII R. R. at 111). After that, a white van drove up and the victim, Felix "Chape" Flores, got off the van (VII R. R. at 40). Chape was seen to have something behind his back and in his hand (VII R. R. at 40). Appellant stepped back from Chape, but then stepped forward and started fighting (VII R. R. at 16). A fight ensued between Felix Flores and the appellant and a number of additional males. Appellant punched Felix Flores and knocked him down (VII R. R. at 16, VIII R. R. at 34). After the fight was over, appellant took off running down 18th street and Adriana Benavides got back into the Expedition, drove after the appellant and picked him up about a block away from the location of the fight (VII R. R. at 17, 44). Adrienne Lopez stayed at the house on 18th Street, intoxicated and

3

throwing up (VII R. R. at 112). When Adriana Benavides and the appellant were leaving 18th Street, the white van driven by Felix Flores followed them for about a block (VII R. R. at 44, 90). The appellant got back into the black Expedition with Adriana Benavides and went back to the party on Cedar Street (VII R. R. at 18, VIII R. R. at 111-112). Appellant did not have any injuries that required medical attention and he was laughing about his injuries (VII R. R. at 94). Adriana Benavides and the appellant waited at the party on Cedar Street until Leonardo Rivas returned to the party (VII R. R. at 19). Once Leonardo Rivas returned to the party on Cedar Street, appellant told him about the fight on 18th Street (VI R. R. at 227-229). Appellant told Leonardo "If you're down to roll, let's ride." At first, Leonardo Rivas told the appellant "No" (VI R. R. at 264-265). Leonardo Rivas was heard telling the appellant, "Fuck them. I already told these mother fuckers they are not going to fuck with us. Fuck that bro, Fuck that shit. I am tired of their shit" (VI R. R. at 228, 265-266). Appellant told Leonardo Rivas "Fuck that. Let's go get them" (VI R. R. at 266). Immediately before Leonardo Rivas, Adriana Benavides and the appellant departed the party on Cedar Street, the gun was heard to have been "racked" (by pulling back the chamber of the gun) (VI R. R. at 253). Leonardo Rivas was seen to retrieve the gun and the appellant was also seen with the gun (VI R. at 253, VII R. R. at 20). When they drove off around 1:00 a.m. on October 15, 2011, from Cedar Street, Adriana Benavides was in the driver's seat, but the parties stopped the vehicle and switched seats so that the appellant was driving while Adriana Benavides was in the rear passenger seat (VI R. R. at 254, VII R. R. at 21). Leonardo Rivas was in the front passenger seat (VI R. R. at 255). After leaving Cedar Street, Leonardo Rivas, Adriana Benavides and the appellant drove down 11th Street where they saw a police officer. The appellant pulled into a driveway and Adriana Benavides got off the car and pretended to be visiting someone at a house on 11th Street in an effort to evade the police and

4

to appear as if they were not engaged in any type of criminal activity (VII R. R. at 22-24, 246, VIII R. R. at 14). While they were stopped at this residence, Leonardo Rivas told the appellant, "I'm going to make you a believer" (VII R. R. at 22). Later on before arriving at 1406 12th Street, Leonardo Rivas told the appellant that he "might know where the guy (Felix Flores) would be" (VII R. R. at 91).

At approximately 12:45 a.m. on October 15, 2011, Felix Flores went to Villa's restaurant and had a brief conversation with his brother Johnny Joe Flores who was about to end his shift. Felix Flores was supposed to go get cigarettes and then meet his brother, Johnny Joe Flores, his sister-in-law, Margie Gonzales, and Felix's girlfriend, Janie Aguilar, back at their house at 1406 12th Street (IV R. R. at 29-30, 87, 156, 182, VII R. R. at 143). Johnny Joe Flores and Margie Gonzales had lived at 1406 12th Street in Hondo, Texas, for 9 years (IV R. R. at 34). Felix Flores arrived at 1406 12th Street at approximately 1:15 a.m. (IV R. R. at 62, VII R. R. at 145). When he arrived, he had a bump on the top of his right eye that had not been there earlier when he had come by the restaurant (IV R. R. at 33, 58-59,162, 183, V R. R. at 15, VI R. R. at 145, VII R. R. at 188). At the time Felix Flores arrived at 1406 12th Street, Johnny Joe Flores, Margie Gonzales and Janie Aguilar were unwinding after work. They were eating tacos that they had brought home and were resting on a cement slab right outside of their mobile home (IV R. R. at 32, 157, VII R. R at 144). Margie Gonzales had also brought a taco for Felix to eat and had given it to him (IV R. R. at 162, 187). Felix told Johnny Joe Flores, Janie Aguilar and Margie Gonzales about the previous altercation on 18th Street whereat he said that he had been "jumped." Felix never expressed any intention of extracting revenge on Leonardo Rivas or the appellant (IV R. R. at 87, 90, 187, 204, 211, VII R. R. at 190-191). Felix Flores was at 1406 12th Street for approximately ten minutes eating his taco when Leonardo Rivas, the appellant and Adrianna

Benavides drove up in the black Expedition (IV R. R. at 35, VII R. R. at 151). The appellant was still in the driver's seat, Leonardo Rivas was in the front passenger seat and Adrianna Benavides in the back passenger seat (IV R. R. at 36.) The appellant stopped the black Expedition three to four feet short of the stop sign in front of the mobile home and parked close to the property line (IV R. R. at 35-36, 64, 188). At the time the appellant drove up to 1406 12th Street, the victims, including Felix Flores, were approximately 11 feet from the property line, inside of their yard standing and sitting on the concrete slab eating their tacos (IV R. R. at 64, 162, 211, VI R. R. at 167). When the black Expedition drove up, a male voice was heard saying "That's him" (IV R. R. at 97, 190) Upon seeing the appellant and Leonardo Rivas, Felix Flores said to his brother "That's them," put his hands up in the air and yelled in Spanish "Que Onda" which means "what's up" and then took approximately two and a half steps (IV R. R. at 36-37, 68-69, 166, 190, VII R. R. at 26, 52, 147, 150-151). Leonardo Rivas then pretended like he was going to open the door of the vehicle, but instead started firing a weapon outside of the Expedition at Felix Flores (IV R. R. at 36, 167, 192-193, VII R. R. at 27, 149, 185, VIII R. R. at 78). Felix Flores was shot nine (9) times where he stood and fell to the ground near the concrete slab close the mobile home (IV R. R. at 38, 80, 193, 247, VI R. R at 86, VII R. R. at 52). During the shooting, Johnny Joe Flores pushed his wife Margie Gonzales out of the way and was shot in his upper right thigh (IV R. R. at 38, 40). Leonardo Rivas and the appellant testified that Leonardo was the sole shooter, however, other witnesses testified that they believed at some point the Leonardo stopped shooting, the appellant grabbed the gun and reinitiated the shooting (IV R. R. at 39, 172-173, 194-195, VII R. R. at 50, 149, 169, 192). Janie Aguilar ran to the side of Felix Flores's white van to hide (IV R. R. at 40, VII R. R. at 152). At the time of the shooting, three sons of Johnny Joe Flores and Margie Gonzales were inside of the mobile home along with their

6

four grandchildren (IV R. R. at 40, 159). Felix Flores was unarmed at the time of the shooting, as were the other victims. There were no weapons found at the crime scene (IV R. R. at 42, 169-171, 227, 234-235, V R. R. at 113, 128-129, VI R. R. at 12-13, 36, 103-104, 148-149, VII R. R. at 27, 30, 53, 148, 150). Felix Flores never traveled from where he was standing to where the Expedition was parked (IV R. R. at 207, VII R. R. at 51, 56-57, 150, 154, 195). There were no blood drops from the location where Felix Flores fell after being shot to the location where the Expedition was parked (V at R. R. at 91, 132, VI R. R. at 37, 103, 148). The witnesses testified that Felix Flores never struck anyone in the Expedition either with a weapon or with his fists (IV R. R. at 118, 169, VII R. R. at 31, 51). Johnny Joe Flores never made advances toward the vehicle and was shot when he was pushing his wife out of the line of fire (IV R. R. at 136, 169-170). Felix Flores suffered nine gunshot wounds, the majority of which were at the chest area (IV R. R. at 10, 12, VII R. R. at 27, 52). Johnny Joe Flores suffered a gunshot to his leg, one bullet went through the vehicle parked at the residence and one bullet went through the children's bedroom (IV R. R. at 42, 44).

Leonardo Rivas testified at the time the Expedition stopped at the stop sign in front of 1406 12th Street, Felix Flores approached his side of the vehicle and was swinging at him with his right hand and that somehow appellant was stabbed in his left hand (VIII R. R. at 51-52). Felix Flores was left handed (IX R. R. at 14).

After the shooting, Leonardo Rivas and the appellant drove to Leonardo's mobile home on 11th Street. Appellant and Leonardo Rivas exited the Expedition, hugged each other and then ran off in different directions (VII R. R. at 243). Appellant told Adriana Benavides to drive off and she refused to do it. It was only after Leonardo and the appellant ran off did she get back into the Expedition and then drove to her home (VII R. R. at 29). At all times, Adriana Benavides was

with the Leonardo Rivas and the appellant of her own free will and never made any attempt to get away (VII R. R. at 50).

The first Hondo Police officer to arrive on the scene was Ramiro Guedea, followed by Officer Brandon Teer, Officer John Dunkley, Sergeant Brian Valenzuela and Detective Sergeants Rick Garza and Jo Ann Evans (V R. R. at 86-87, 126, VI R. R. at 6-11, 144). The evidence revealed that casings to the weapon were found on the roadway in a location that would have been outside and to the right of the vehicle of where it had been parked (VI R. R. at 53, 54, 100-101). The distance from the concrete slab were the victims were standing and sitting at the time of the shooting to where the casings were located was approximately six feet to eleven feet (VI R. R at 100, 167). Officer John Dunkley was concerned that the casings would be disrupted when the EMS ambulance pulled up in front of the mobile home; consequently, Sergeant Valenzuela told Officer Dunkley to pick up some of the casings and then he told Sergeant Evans where they had been located (VI R. R. at 11, 53). There was no evidence found in the black Expedition that either Leonardo Rivas or the appellant had been injured or assaulted in any way. Nor was there any evidence of blood of the victim in the Expedition, despite the contention of Leonardo Rivas that Felix Flores was right up against the passenger side window when Leonardo shot him (VI R. R. at 153, VIII R. R. at 77). Leonardo Rivas was apprehended in Bexar County on October 19, 2011. At the time of his arrest in Bexar County, there were no injuries to his body, other than a small abrasion on the inside of his left hand (VI R. R. at 159-160). The appellant was apprehended on October 22, 2014, in Bexar County (VI R. R. at 161). At the time of his arrest, appellant had no injuries to his body other than a small abrasion to the back of head and a scratch on his chest (VI R. R. at 163-165).

8

The appellant testified that he had only been out of the Texas Department of Corrections Substance Abuse Facility for three (3) days when this incident occurred (VIII R. R. at 20-21). He also testified that he was previously a member of the Mexican Mafia until he was kicked out (VII R. R at 215-216). He testified that Leonardo Rivas fired the shots at the house at 1406 12th Street (VII R. R. at 240). The appellant testified that he never sought any medical attention for any injuries he suffered as a result of the altercation at 18th Street (VII R. R. at 245). The appellant referred to the victim, Felix Flores, as just "another civilian" and the victim, Johnny Joe Flores, as an "innocent bystander" (VII R. R. at 225, 245). The appellant gave inconsistent testimony as to who came up to the Expedition when it parked at the house at 1406 12th Street (VII R. R. at 257). He could not testify that Felix Flores had anything in his hand when he approached the vehicle, if he was swinging in the vehicle or if he even said anything (VII R. R. at 258).

Leonardo Rivas testified that he was at the party at Cedar Street with the appellant on October 14, 2011, and that at some point the appellant left with Adriana Benavides (VIII R. R at 47-48). When the appellant returned, he appeared to have been injured and Leonardo wanted to go to his sister's house which is also on Cedar Street to get appellant bandages (VIII R. R. at 49). Instead, they got into the black Expedition and took off driving. Leonardo Rivas testified that the appellant did not want to go to Leonardo's house on 10th Street (VIII R. R. at 50). At some point while they were driving around, they stopped at the victims' house at 1406 12th Street and that is when Felix Flores approached the Expedition and started swinging at Leonardo Rivas (VIII R. R. at 51-52). Because Felix Flores was swinging at him, Leonardo grabbed his handgun which was between the seat and the console and began shooting at Felix Flores (VIII R. R. at 52-54). Leonardo also testified that he put the weapon outside of the window to shoot Felix Flores

9

(VIII R. R. at 78). Leonardo Rivas testified that Felix Flores was right up against the vehicle when Leonardo shot him (VIII R. R. at 77). Leonardo admitted to carrying a gun constantly despite not having a concealed hand gun license (VIII R. R. at 58).

The testimony of the medical examiner was that there were nine (9) gunshot wounds to Felix Flores's body. The fatal wound was gunshot "A" which was to his right ear, traveled down the base of his skull and cut the spinal cord. This wound would have caused Felix Flores to drop to the ground where he was standing and incapacitate him. Felix Flores would have been unable to move after this wound (V R. R. at 16, 27, 45). There was no evidence of stripling on Felix Flores (V R. R. at 18). Gunshot "A" was fired more than two to three feet away from the body (V. R. R. at 41). Gunshot wound "G" entered Felix Flores's body from the rear while he was turning away from the shooter (V R. R. at 47). Felix Flores was 5' 7", weighed 315 pounds and was considered morbidly obese (V R. R. at 20). At the time of death, he had a blood alcohol level of .122 and had three prescription depressant drugs, methadone, tramadol, hydrocodone, in his system. Felix Flores had previously had a botched hemorrhoid surgery sometime in 2011 and an enlarged heart condition (IV R. R. at 113, 176, V R. R. at 20-21, 41, VII R. R. at 154-155). The array of gun shots on his body would support the scenario that the shooter was sitting still while the victim was turning around trying to avoid being shot (V R. R. at 32-33). The cause of death was multiple gunshot wounds and the manner of death was homicide (V R. R at 50).

## SUMMARY OF THE ARGUMENT

The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense. Tex. Penal Code Ann. § 2.03 (c) (Vernon 2011). If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt

on the issue requires that the defendant be acquitted. Tex. Penal Code Ann. § 2.03 (d) (Vernon 2011).

In the instant case, the court's charge first instructed the jury on murder and then instructed the jury on the elements of self-defense and deadly force and contained an application paragraph on the issue of self-defense. The court's charge then instructed the jury in an application paragraph on the issue of aggravated assault with a deadly weapon and included a reference to the instructions regarding self-defense. The appellant objected to the language in the original charge which may have been more appropriate than that contained in the court's final charge.

The record is clear that appellant relied on self-defense as a defensive theory at trial. The state did not dispute the appellant's application of the law, although the state did contest the validity of the appellant's defense. There is nothing in the record indicating that the jury was misinformed or uninformed on the law of self-defense.

The appellant did not object to the court's charge on the law of parties.

In the instant case, there was ample evidence to convict the defendant of murder and aggravated assault with a deadly weapon under the law of parties. The evidence was that the appellant got into an altercation with Felix Flores earlier in the evening, that he and his brother drove around Felix Flores's brother's home that night, that they attempted to evade police when they saw an officer in the area, that his brother had a gun in the Expedition, that the appellant was the one driving the Expedition, that the co-defendant shot at Felix Flores and Johnny Joe Flores and that the appellant picked up the gun and leaned over the co-defendant and also shot at Felix Flores and Johnny Joe Flores. Additionally, there was evidence that the appellant fled the scene of the crime and remained at large for one (1) week after the offense.

11

The definitions in the court's charge did not mislead or confuse the jury as to their responsibility. The jury charge properly instructed the jury regarding the appellant acting as a party to the offense of murder and aggravated assault with a deadly weapon.

Appellee would request that this court modify that judgment to delete the assessment of attorney's fees in the judgment and order the district clerk to delete the attorney fees from the bill of costs.

## RELEVANT CASE LAW AND ARGUMENT

## ISSUE NUMBER ONE

## THE TRIAL COURT DID NOT ERR IN ITS CHARGE TO THE JURY IN APPLYING THE LAW OF SELF-DEFENSE

## ARGUMENT AND AUTHORITIES

The issue of the existence of a defense is not submitted to the jury unless evidence is admitted supporting the defense. Tex. Penal Code Ann. § 2.03 (c) (Vernon 2011). If the issue of the existence of a defense is submitted to the jury, the court shall charge that a reasonable doubt on the issue requires that the defendant be acquitted. Tex. Penal Code Ann. § 2.03 (d) (Vernon 2011).

When the trial court includes in the charge a defensive issue, but fails to do so correctly, this is charge error subject to review under Almanza. *Vega v. State,* 394 S.W. 3d 514, 519 (Tex. Crim. App. 2013) *citing Almanza v. State,* 686 S.W. 2d 157 (Tex. Crim. App. 1985) (op. on reh'g). If there was an objection in the trial court, reversal is required if the accused suffered some harm. *Id.* If no proper objection was made at trial, a reversal is required only if the error caused egregious harm. *Id.* However, failure to apply the law of a case to its facts does not amount to a federal constitutional error, but is rather, a technical violation of state-law rule. *See Barrera v. State,* 982 S.W. 2d 415, 417 (Tex. Crim. App. 1998) (en banc).

12

A charge which fails to apply a theory of law to the facts of the case is insufficient to authorize conviction on that theory. *Jones v. State,* 815 S. W. 2d 667, 670 (Tex. Crim. App. 1991). This rationale is founded upon the notion that a charge which contains an abstract paragraph on a theory of law, but does not apply the law of the facts, deprives the defendant of "a fair and impartial trial." *Id.* However, if the jury charge includes a reference in the application paragraph to the abstract instruction then a conviction is authorized under the law. *Greene v. State,* 240 S.W. 3d 7, 15 (Tex. App. – Austin 2007, no pet.) *citing Marvis v. State,* 36 S.W. 3d 878, 880 (Tex. Crim. App. 2001).

For example, in Greene v. State, the application paragraph did not explicitly apply the abstract law to the facts of the case. *Greene v. State,* 240 S.W. 3d at 15. Instead, it referred the jury to the "foregoing instructions and definitions" and authorized appellant's conviction for capital murder if the jury found that appellant, "either acting alone or as a party" caused the deaths in the course of the same criminal transaction. *Id.* The application paragraph of a jury charge is that which authorizes conviction. *Id.* An abstract charge on a theory of law which is not applied to that facts in insufficient to bring that theory to the jury. *Id.* It is error for a trial court to instruct the jury on the law in the abstract portion of the charge but then fail to apply or refer to the law in the application paragraph of the charge. *Id.* However, where the charge includes abstract instructions on the law and the application paragraph incorporates those instructions by reference then the jury is authorized to convict. *Id.*

When reviewing error in the charge, the courts consider 1) the charge; 2) the evidence; 3) the arguments of counsel; and 4) any other relevant information from the record. *Barrera v. State*, 10 S.W. 3d 743, 745 (Tex. App. – Corpus Christi 2000, no pet.).

13

In the instant case, the court's charge first instructed the jury on murder and then followed with the application paragraph for that offense that included the following language: "If you do not find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the defendant not guilty" (II C.R. at 493-509). The court's charge then instructed the jury on the elements of self-defense and deadly force and contained an application paragraph on the issue of self-defense (II C. R. at 496-499). The court's charge then instructed the jury in an application paragraph on the issue of aggravated assault with a deadly weapon and included a reference to the "**instructions above regarding self-defense**" and it concluded with the following statement: "…but if you do not so find, or if you have a reasonable doubt thereof, you will acquit the defendant, and say by your verdict not guilty" (II C.R. at 499-500) (emphasis added). The charge also included the following statements: 1) "The prosecution has the burden of proving the defendant guilty, and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and, if it fails to do so, you must acquit the defendant." 2) "In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict 'not guilty'." (II C.R. at 504-505).

The instant case differs slightly from Barrera in that the trial court in Barrera failed to provide an application paragraph on the law of self-defense and an instruction advising the jury of the circumstances requiring a conviction or acquittal of the defendant (II C.R. at 493-509), *See Barrera v. State*, 951 S.W. 2d at 153, 156 (Tex. App. – Corpus Christi 1997) *rev'd en banc,* 982 S.W. 2d 415 (Tex. Crim. App. 1998). As cited above, the court's charge in the instant case did contain an application paragraph on the law of self-defense (II C.R. at 501).

14

There was also discussion between counsel during the charge negotiations about the language in the court's charge on the law of self-defense (VIII R. R. at 143-147, IX R. R. at 5-6, 21-22). Appellant objected to the original language in the court's charge which read "Bearing in mind, the foregoing instructions on the issue of deadly force in defense of person, you must find that the Defendant Michael Rivas and/or Leonardo Rivas was not justified in using deadly force, if any, against Felix Flores but if you do not so find or if you have a reasonable doubt, you will acquit." (VIII R.R. at 143-144). The prosecution argued that the state had to prove that defense was not there beyond a reasonable doubt (VIII R.R. at 145-146). The appellant stated that he thought there were "better ways of putting [the issue of reasonable doubt of the self-defense requiring an acquittal]. (II C.R. at 145), Tex. Penal Code. Ann § 2.03(d) (Vernon 2011). The trial court changed the language from "deadly force" to "self-defense" to correspond with Tex. Penal Code § 9.31. Tex. Penal Code Ann. § 9.31 (Vernon 2011). The trial court later changed the language of the self-defense application paragraph without an objection from appellant. In fact, appellant seemed to acquiesce to the language that was finalized in the court's charge in that the court dictated the language in open court that she wanted in the charge (VIII R. R. at 5-6). The court then instructed the state to print out the court's charge and asked all counsel if there was "anything else" to which appellant replied "Nothing from Michael Rivas, your honor." *Id.* The trial court again asked for any objections regarding the final version of the court's charge to which appellant replied "Not from Michael Rivas save and except for the ones that have already been ruled on, Your Honor" (IX R. R. at 21-22). The court removed the original language of §2.03(d) of the Texas Penal Code at the request of the appellant and the appellant did not later request that the language be included into the charge.

15

The instant case differs from <u>Barrera</u> and <u>Jonas</u> in that in the instant case the appellant objected to the language in the original charge which may have been more appropriate than that contained in the court's final charge.

Additionally, it is clear from the record that appellant and the co-defendant relied on self-defense as a defensive theory at trial (VII R.R. at 238-243, 257-259, VIII R.R. at 31-32, IX at 44-46, 53), *Barrera v. State,* 10 S.W. 3d 743, 745-746 (Tex. App. – Corpus Christi, no pet.). The appellant asserted that he was justified in his involvement of the murder of Felix Flores and the aggravated assault of Johnny Joe Flores because he was in an altercation earlier in the evening with the deceased and other members of the Mexican Mafia. Additionally, when his brother, Leonard Rivas, Adriana Benavides and he drove up to the deceased's brother's home and the deceased came up and said something to his brother on the passenger side of the vehicle, his brother, Leonardo Rivas, was justified in firing shots at the deceased. *Id.* In the appellant's closing argument, he urged self-defense. The state did not dispute the appellant's application of the law, although the state did contest the validity of the appellant's defense. The appellant argued "….under the law as the Judge has informed you, a person cannot claim self-defense or deadly force in defense of person if they do what is called provoking the difficulty…When he refused to carry out a green light on Anna Benavides, he was in violation of his agreement with the Texas Mexican Mafia and the assault ensued, hence, he did not provoke the difficulty. Hence, he is allowed to employ the law of self-defense….. I would submit to you that it shows that my client could rely on the same defense that Leonard Rivas could rely on, the law of self-defense not provoked by Michael Rivas but provoked by Felix Flores….I would ask you to return a verdict of not guilty on each and every one of those charges for one of two reasons.

16

One, the state hasn't met their burden of proof or two, the defense has been established." (IX R.R at 44-46). *See Barrera v. State,* 10 S.W. 3d at 745-746.

There is nothing in the record indicating that the jury was misinformed or uninformed on the law of self-defense. *Barrera v. State*, 10 S.W 3d at 746, *Linden v. State,* 347 S.W.3d 819, 823 (Tex App. – Corpus Christi 2011, pet. ref'd). The jury was given a general instruction on the law of self-defense and an application paragraph on self-defense. Reference was made in the application paragraph of the charge for the offense of aggravated assault to the general instructions regarding the law of self-defense. *Id.* Additionally, trial counsel objected to the first draft of the court's charge that included language that the jury should acquit if they had reasonable doubt on the issue of self-defense. *Id.*

Additionally, there is a decline in authority of the importance of the application paragraph of a court's charge. *Barrera v. State,* 982 S.W.2d at 417. It may well be that the application paragraphs are an anachronism and that jurors could perform just as well without the paragraph. *Id.* In light of the relative decline in the importance of the application paragraph, any error on the part of the trial court to be more elaborate in the application paragraph on the law of self-defense did not cause harm. *Barrera v. State,* 10 S.W. 3d at 746.

Appellant's first point of error should be overruled.

**<u>ISSUE NUMBER TWO</u>**

**THE TRIAL COURT DID NOT ERR IN ITS CHARGE TO THE
JURY IN ITS APPLICATION OF THE LAW OF PARTIES**

When an appellate court is presented with potential jury charge error, the court must conduct a two-step inquiry: 1) the reviewing court must determine whether the jury charge contains error; 2) the reviewing court must determine whether sufficient harm resulted from the error to require reversal. *Vogt v. State*, 421 S.W. 3d 233, 239 (Tex. App. – San Antonio, 2013,

17

no pet. h.) *citing Mann v. State,* 964 S.W. 2d 639, 642 (Tex. Crim. App. 1998). If an appellate court finds an error in the jury charge, the question of which standard of harm applies is dependent upon whether an objection was lodged. *Id.* Where there has been a timely objection made at trial, an appellate court will search for only "some harm." By contrast, where the error is urged for the first time on appeal, a reviewing court will search for "egregious harm." *Id.* In conducting its analysis, the court must consider: 1) the jury charge as a whole, 2) the arguments of counsel, 3) the entirety of the evidence, and 4) other relevant actors present in the record. *Id.*

The trial court provided the following charge on the law of parties:

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Each party to an offense may be charged with commission of the offense. Each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice. A person is criminally responsible for an offense committed by the conduct of another if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. If, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy (II C.R. at 494-495).

18

Now if, bearing in mind the foregoing instructions and definitions, if you find from the evidence beyond a reasonable doubt that on or about October 15, A.D. 2011, in Medina County, Texas, the defendant, MICHAEL A. RIVAS, as alleged in the indictment, acting alone or as a party to the offense, did then and there, intentionally, or knowingly cause the death of an individual, namely Felix Flores, by shooting him with a firearm, then you find the defendant guilty of the offense of murder, and so say by your verdict (II C.R. at 495).

Now bearing in mind the foregoing instructions and definitions, including the instructions above regarding self-defense, you find beyond a reasonable doubt that, in Medina County, Texas, on or about October 15, A.D. 2011, the defendant, MICHAEL A. RIVAS, did then and there, acting alone or as a party to the offense, intentionally, knowingly, or recklessly cause bodily injury to Johnny Joe Flores, by shooting him with a firearm, and the defendant did then and there use or exhibit a deadly weapon, to wit:, a handgun, then you will find the defendant guilty of the offense of Aggravated Assault With a Deadly Weapon; but if you do not so find, or if you have a reasonable doubt thereof, you will acquit the defendant, and say by your verdict not guilty (II C.R. at 500).

The appellant did not object to this jury instruction (VIII R.R. at 139-158, IX R.R. at 3-7, 21-22), S*ee Appellant's brief pg. 9-11*.

The appellant relies on the Jaycon decision. *Jaycon v. State,* 651 S.W.2d 803 (Tex. Crim. App. 1983) (en banc). In <u>Jaycon,</u> there was no evidence that Jaycon was the primary actor or that Jaycon was even present at the time of the shooting. *Id.* at 807. That court held that if

19

Jaycon was guilty, he was only guilty as a party. The court explained the jury instruction must be limited to the facts of the case. *Id.* The facts in the instant case are very different from the Jaycon case. By the appellant's own testimony, he was present at the scene when the shooting occurred. Additionally, both Johnny Joe Flores and Margie Gonzales testified that they saw the appellant pick up the weapon in the front seat of the Expedition, lean over the co-defendant and fire shots at Felix Flores and Johnny Joe Flores. *Id.*, (IV R.R. at 38-39, 166-173, VII R.R. at 233-236), *Vogt v. State,* 421 S.W. 3d at 240.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. Tex. Penal Code Ann. §7.01(a) (Vernon 2011). A person is criminally responsible for an offense committed by the conduct of another if…acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids or attempts to aid the other person to commit the offense." Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2011). A trial court may instruct the law of parties if there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties. *Ladd v. State,* 3 S.W.3d 547, 564 (Tex. Crim. App. 1999). The court may consider the events that took place before, during, and after the commission of the crime. *Vogt v. State,* 421 S.W.3d at 241.

In the instant case, there was ample evidence to convict the defendant of murder and aggravated assault with a deadly weapon under the law of parties. The evidence was that the appellant got into an altercation with Felix Flores earlier in the evening, that he and his brother drove around Felix Flores's brother's home that night, that they attempted to evade police when they saw an officer in the area, that his brother had a gun in the Expedition, that the appellant was the one driving the Expedition, that the co-defendant shot at Felix Flores and Johnny Joe

20

Flores and that the appellant picked up the gun and leaned over the co-defendant and also shot at Felix Flores and Johnny Joe Flores. Additionally, there was evidence that the appellant fled the scene of the crime and remained at large for one (1) week after the offense (IV R. R. at 161).

The court's instructions required the jury to either find that the appellant intentionally or knowingly caused the death of Felix Flores or was criminally responsible for the acts of the person that caused the death of Felix Flores (II C.R. at 495, 500). *Vogt v. State,* 421 S.W. 3d at 241.

In the absence of a timely objection, the charge error requires reversal only if it results in egregious harm. *Neal v. State,* 256 S. W. 3d 264, 278 (Tex. Crim. App. 2008).

The definitions in the court's charge did not mislead or confuse the jury as to their responsibility. Rather, a reasonable jury would be able to refer to the abstract definition of the law of parties without having it repeated again in the application paragraph. *Vogt v. State,* 421 S.W. 3d at 241, *citing Vasquez v. State,* 389 S.W. 3d 361, 366 (Tex. Crim. App. 2012). Accordingly, the jury charge properly instructed the jury regarding the appellant acting as a party to the offense of murder and aggravated assault with a deadly weapon. *Id.*

Even assuming some error, reversal is only required if the error was calculated to injure the rights of the defendant; that is, some harm to the accused has resulted. *Almanza v. State,* 686 S.W. 2d 157, 171 (Tex. Crim. App. 1985). To determine the degree of harm under the *Almanza* standard, the court reviews the 1) entire charge the state of evidence, including the contested issues and weight of probative evidence; and 3) the argument of counsel and any other relevant information revealed by the record of the trial as a whole. *Vogt v. State*, at 242. The state charged that the appellant acted alone, as a party, or as a conspirator. The instant case contains ample evidence that the appellant was guilty not only as a party, but also as a principal. There

was sufficient jury argument, the evidence presented and jury charge in its entirety do not support that the jury was misled by the court's charge. *Id.* at 243-245. Thus, the appellant's second point of error should be overruled.

## ISSUE NUMBER THREE

**THE TRIAL COURT DID NOT ERR IN ASSESSING ATTORNEY'S FEES TO THE JUDGMENTS IN THAT THE JUDGMENTS WERE TO REFLECT THAT TIME AND MONEY WERE TO RUN CONCURRENTLY**

### ARGUMENT AND AUTHORITIES

An appellant may challenge the sufficiency of the evidence to support an assessment of attorney fees in the written judgment for the first time on appeal and that claim need not be preserved by an objection in the trial court. *Mayer v. State,* 309 S.W. 3d 552, 556 (Tex. Crim. App. – 2010). Compensation of counsel appointed to represent defendants is governed by Article 26.05 of the Texas Code of Criminal Procedure. A trial court may order a defendant to pay for the costs of legal services provided if it first determines that the defendant has financial resources that enable him to offset in part or in whole the costs. Code Crim. Proc. Ann. art. 26.05(g) (Vernon 2011). A defendant who has previously been found indigent is presumed to remain indigent unless there is a material change in his financial status. *Wiley v. State*, 410 S.W. 3d 313, 317 (Tex. Crim. App. 2013). In the absence of any indication in the record that his financial status has in fact changed, the evidence will not support a judgment of attorney fees. *Id.*, *citing Mayer v. State,* at 557.

The record indicates that the appellant did not wish to have a court appointed lawyer in this matter (I C.R. at 32). The clerks' record does not include an application for a court appointed attorney nor does it include an affidavit of indigency. Nonetheless, the record

22

indicates that the trial court found the appellant to be indigent and appointed counsel to represent him in the trial court (I C.R at 33, 41, 43).

There is nothing in the record to support a finding that the appellant did or did not lack an ability to pay for his attorney's fees. Additionally, the appellee notes that there is nothing in the record to support a finding that the appellant's ability to pay attorney's fees did or did not change after the trial court determined him to be indigent. *See Wiley v. State,* at 317.

In the event that this court finds that it was error for the court to assess attorney fees absent a finding of a material change in the appellant's financial status when the appellant did not apply for a court appointed attorney, the state would request that this court modify that judgment to delete the assessment of attorney's fees in the judgment and order the district clerk to delete the attorney fees from the bill of costs.

The undersigned will note for this court that in preparation of this appeal it was discovered that the judgments for this appellant were in error in that the judgments should reflect that time and money were to run currently. The undersigned has brought this to the attention of the trial court and the court has ordered that the judgments in this case be corrected to reflect that the time and attorney's fees to run currently. A supplemental clerk's record will be forthcoming.

## **PRAYER**

For these reasons, **STATE OF TEXAS,** Appellee, requests that this Honorable Court to affirm the decision of the trial court on all three issues. In the alternative, appellee requests that this Court delete that attorney's fees from each judgment or permit the trial court additional time to submit reformed judgments stating that the time and attorney's fees are to run concurrently. The Appellee requests any other relief to which it may be justly entitled.

Respectfully submitted,

**DANIEL J. KINDRED**
**38TH JUDICIAL DISTRICT ATTORNEY**
**MEDINA COUNTY, TEXAS**
3102 Avenue G
Hondo, Texas 78861
Telephone:  (830) 741-6188
Facsimile:  (830) 741-6033

By: *\/s/ Christina Busbee*
    **CHRISTINA BUSBEE**
    State Bar No.  00797819
    **ASSISTANT DISTRICT ATTORNEY**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the **APPELLEE'S BRIEF** was served on

**MICHAEL C. GROSS, GROSS & ESPARZA, P.L.L.C. at 106 SOUTH ST. MARY'S STREET, SUITE**

**260, SAN ANTONIO, TEXAS 78205,** via electronic mail address**, lawofcmg@gmail.com** on May

7, 2015**.**

*\/s/ Christina Busbee*
CHRISTINA BUSBEE

24